Robyn E. Bladow (CA Bar No. 205189)
rbladow@kirkland.com
Kirkland & Ellis LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

*Attorneys for Defendant Instructure, Inc.*
(*Additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JASMINE HERNANDEZ-SILVA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> INSTRUCTURE, INC., <br><br> Defendant. | Case No. 2:25-cv-02711-SB-MAA <br><br> **INSTRUCTURE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Date: July 18, 2025 <br> Time: 8:30 a.m. <br> Courtroom: 6C <br> Judge: Hon. Stanley Blumenfeld, Jr. |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND ....................................................................................2

    A.    Instructure Provides Software Services to Schools Pursuant to Federal and State Authorization............................................................2

    B.    Plaintiffs' Complaint............................................................................4

III.  LEGAL STANDARD ...........................................................................6

IV.   ARGUMENT ........................................................................................6

    A.    Plaintiffs Fail to Plausibly Plead § 1983 Claims (Counts I and II). ...6

    B.    California Plaintiffs' CIPA Claim (Count III) Fails as a Matter of Law.....................................................................................................11

    C.    California Plaintiffs Do Not Sufficiently Plead That Instructure Violated CDAFA (Count IV)..............................................................13

    D.    California Plaintiffs Fail to State a UCL Claim (Count V). .............14

    E.    California Plaintiffs Cannot State a Claim Under the Tom Bane Civil Rights Act (Count VI).........................................................................15

    F.    Plaintiffs' Common Law Claims (Counts VII Through IX) Should Be Dismissed for Failure to Allege What Law Governs. .................16

    G.    Plaintiffs Fail to Plead Common Law Claims for Invasion of Privacy (Counts VII and VIII)..........................................................................17

    H.    Plaintiffs' Unjust Enrichment Claim (Count IX) Fails as a Matter of Law.....................................................................................................20

V.    CONCLUSION ....................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C. by & through Park v. Cortez*,
    34 F.4th 783 (9th Cir. 2022) .................................................................. 10

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) .................................................... 18

*Arpin v. Santa Clara Valley Transp. Agency*,
    261 F.3d 912 (9th Cir. 2001) ................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................... 6, 11

*Boulton v. Community.com, Inc.*,
    2025 WL 314813 (9th Cir. Jan. 28, 2025).............................................. 12

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys. Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ................................................................. 6

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010) ............................................................... 7, 8

*Cherkin v. PowerSchool Holdings, Inc.*,
    2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ........................................ 15

*Cherkin v. PowerSchool Holdings, Inc.*,
    No.: 3:24-cv-02706-JD (N.D. Cal. May 27, 2025) ................................. 1

*Cnty. Inmate Tel. Serv. Cases*,
    48 Cal. App. 5th 354 (Cal. Ct. App. (2020) ......................................... 16

*Davis v. HSBC Bank Nev., N.A.*,
    691 F. 3d 1152 (9th Cir. 2012) ............................................................. 15

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024).................................................... 1

*Doe v. Bonta*,
    101 F.4th 633 (9th Cir. 2024) ............................................................... 10

*Doe v. Cnty. of Santa Clara*,
  2024 WL 3346257 (N.D. Cal. July 8, 2024) .......................................................14

*Est. of Valentine v. Cnty. of Merced*,
  2024 WL 4374303 (E.D. Cal. Oct. 2, 2024).......................................................16

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ...............................................................................19

*Fernandez-Wells v. Beauvais*,
  983 P.2d 1006 (N.M. Ct. App. 1999) ...................................................................17

*Fugate v. Phoenix Civ. Serv. Bd.*,
  791 F.2d 736 (9th Cir. 1986) ..................................................................................9

*Garcia v. Build.com, Inc.*,
  2023 WL 4535531 (S.D. Cal. July 13, 2023).......................................................12

*In re Google, Inc. Priv. Pol'y Litig.*,
  2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........................................................19

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021)..................................................................12

*Griffith v. TikTok, Inc.*,
  2023 WL 9019035 (C.D. Cal. Dec. 13, 2023)................................................20, 21

*Griffith v. TikTok, Inc.*,
  697 F. Supp. 3d 963 (C.D. Cal. 2023) ..................................................................14

*Gruber v. Yelp Inc.*,
  55 Cal. App. 5th 591 (2020) .................................................................................11

*Hammerling v. Google LLC*,
  2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247
  (9th Cir. Mar. 5, 2024).........................................................................................12

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022)................................................................15

*Heineke v. Santa Clara Univ.*,
  965 F.3d 1009 (9th Cir. 2020) ............................................................................6, 8

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......................................................... 13, 14

*Hill v. Nat'l Collegiate Athletic Ass'n.*,
   865 P.2d 633 (Cal. 1994) .................................................................................. 18, 19

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................. 20

*Jackson v. Amazon.com, Inc.*,
   559 F. Supp. 3d 1132 (S.D. Cal. 2021), *aff'd*, 65 F.4th 1093 (9th Cir. 2023) ................................................................................................................... 11

*Katz v. United States*,
   389 U.S. 347 (1967) ............................................................................................. 9

*Kavehrad v. Vizio, Inc.*,
   2022 WL 16859975 (C.D. Cal. Aug. 11, 2022) ................................................ 17

*Kearns v. Ford Motor Co.*,
   567 F. 3d 1120 (9th Cir. 2009) .......................................................................... 15

*Libman v. Apple, Inc.*,
   2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .................................................. 11

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................. 21

*Mazza v. Am. Honda Motor Co.*, Inc.,
   666 F.3d 581 (9th Cir. 2012) .............................................................................. 17

*Mills v. Molina Healthcare, Inc.*,
   2022 WL 17825534 (C.D. Cal. Dec. 8, 2022) ..................................................... 4

*Nabeel v. Taylor Swift Prods. Inc.*,
   2024 WL 4444483 (C.D. Cal. July 31, 2024) ................................................... 18

*Obeng-Amponsah v. Don Miguel Apartments*,
   2017 WL 11557563 (C.D. Cal. Apr. 3, 2017) ................................................... 20

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2016) ................................................... 17

*Pasadena Republican Club v. W. Just. Ctr*,
   985 F.3d 1161 (9th Cir. 2021) ............................................................................7

*Paul v. Davis*,
   424 U.S. 693 (1976)...........................................................................................9

*Reese v. Cnty. of Sacramento*,
   888 F.3d 1030 (9th Cir. 2018) .........................................................................15

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982)...........................................................................................8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ............................................................................1

*Schmid v. City & Cnty. of S.F.*,
   60 Cal. App. 5th 470 (2021) ...........................................................................16

*Shah v. Cap. One Fin. Corp.*,
   2025 WL 714252 (N.D. Cal. Mar. 3, 2025) ....................................................14

*Sheehan v. S.F. 49ers, Ltd.*,
   201 P.3d 472 (Cal. 2009)................................................................................20

*Shulman v. Grp. W Prods. Inc.*,
   955 P.2d 469 (Cal. 1998) ...............................................................................17

*Smith v. Maryland*,
   442 U.S. 735 (1979).........................................................................................9

*Sutton v. Providence St. Joseph Med. Ctr.*,
   192 F.3d 826 (9th Cir. 1999) ............................................................................7

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ....................................................................................17

*Torres v. Prudential Fin., Inc.*,
   2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)..........................................12, 13

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021)..........................................................17

*United States v. Attson*,
   900 F.2d 1427 (9th Cir. 1990) .........................................................................9

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ...................................................................................4

**Statutes and Regulations**

20 U.S.C. § 1232g(b)(1)(A) ...........................................................................................2

42 U.S.C. § 1983 ......................................................................................6, 7, 8, 10

34 C.F.R. § 99.31 ..............................................................................................2, 3

Cal. Bus. & Prof. Code § 17200, *et seq*. ...................................................................6

Cal. Bus. & Prof. Code § 17204 ...............................................................................14

Cal. Civ. Code § 52.1 ........................................................................................6, 16

Cal. Educ. Code § 49076(a) ................................................................................2, 3

Cal. Penal Code § 502, *et seq*. ..................................................................................6

Cal. Penal Code § 502 .........................................................................................13, 14

Cal. Penal Code § 631 .......................................................................................6, 11, 12

Cal. Penal Code § 632 ........................................................................................6, 11

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................15

Fed. R. Civ. P. 12(b)(6) ........................................................................................6

## I.    INTRODUCTION

This is one of a group of class actions brought by the same counsel that seek to enact widespread policy changes regarding technology in schools through the courts, rather than legislation.  Indeed, Plaintiffs' counsel admitted in a sworn statement that this and at least seven other lawsuits were filed "in an effort to bring about industry-wide reforms."[1]  Why sue rather than lobby Congress for changes to the relevant statutes?  Plaintiffs' counsel **already tried** lobbying—and failed.  So now, a group of parents and advocates dissatisfied that their schools have chosen to adopt education software—and perhaps equally dissatisfied that federal statutes permit that—try another route:  suing education technology providers through ill-fitting privacy claims. Plaintiffs' 460-paragraph Amended Complaint (Dkt. 33, hereinafter the "Complaint") takes a "kitchen sink" approach, assembling a sprawling catalogue of loosely connected grievances in the transparent hope that one of their claims might survive dismissal. None can.

The Complaint's most fundamental flaw is its overreliance on generic statements about what Instructure's products *can* do and what personal information they *may* interact with, instead of allegations about how those products *actually* harmed them. The Complaint should be dismissed on this basis alone.  *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (dismissing complaint where plaintiffs alleged only "hypothetical examples—based on the generic product descriptions—of how various product features could be used in ways that could result in privacy violations").

Plaintiffs' collection of privacy claims each present their own reasons for dismissal too.  Claims under the Fourth and Fourteen Amendments fail because Plaintiffs cannot plausibly allege state action by Instructure or a deprivation of their

---

[1] *See* Decl. Julie Liddell at 1, *Cherkin v. PowerSchool Holdings, Inc.*, No.: 3:24-cv-02706-JD (N.D. Cal. May 27, 2025), ECF No. 69-1; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record.").

privacy rights.   Plaintiffs' CIPA claim fails because they cannot point to any communication that was read while in transit.   Plaintiffs cannot invoke CDAFA or UCL because they lack statutory standing, having suffered no requisite injury.   Plaintiffs' invasion of privacy claims fail because there are no allegations about a reasonable expectation of privacy, and the unjust enrichment claim is not even a standalone cause of action.

More fundamentally, laws directed at *government* investigative searches, hate crimes, hacking, and wiretapping are not designed to address Plaintiffs' policy disagreement over the use of technology in the classroom.   Governing laws like the Family Educational Rights and Privacy Act ("FERPA") expressly allow schools to engage service providers to collect student data without obtaining consent from each parent. *See* 20 U.S.C. § 1232g(b)(1)(A); 34 C.F.R. § 99.31(a)(1)(i)(B)(1); *cf.* Cal. Educ. Code § 49076(a).   Companies like Instructure are not violating privacy or security expectations by operating as a service provider to schools, which, pursuant to a regime of statutes enacted by federal and state governments, decide when, how, and to whom their students' data is shared, if at all.   Plaintiffs may not like that the current laws give schools this right, but Plaintiffs cannot effectuate a legislative overhaul through a backdoor lawsuit against those providers.   The Court should dismiss the Complaint in its entirety.

## II.   BACKGROUND

### A.   Instructure Provides Software Services to Schools Pursuant to Federal and State Authorization.

Instructure is an education technology company that contracts with schools and school districts to provide software and data management services.  *See* Compl. ¶ 41. These services range from course management to assignment delivery and submission, grading, communication between teachers, students, and parents, and student-data analytics.  *See id.*  Of course, schools have always provided these types of services; but

now, using software offered by Instructure, they can do so more effectively and more efficiently.

As the Complaint tacitly acknowledges, schools are directly authorized by federal law to share student records with education technology providers like Instructure that assist schools in their operations. Specifically, under FERPA, schools can disclose data *without parental or student consent* to a "contractor" for any purpose which *the <u>school</u> decides* aids "legitimate educational interests." 34 C.F.R. § 99.31(a)(1)(i)(A) (listing "conditions [in which] prior consent [is] not required to disclose information"). FERPA recognizes that schools need to outsource certain administrative functions and authorizes them to share data with their contractors without having to collect consent from each student or parent. In addition, under the Children's Online Privacy Protection Act ("COPPA"), pursuant to FTC guidance, online service providers are allowed to collect, use, or disclose personal information from students under the age of 13 with schools' consent (in place of parents').[2]  State legislatures also recognize schools' legitimate need to use software vendors. The California Education Code, for example, allows school districts to provide "access to pupil records" to a person authorized by federal regulation to have them "without written parental consent." Cal. Educ. Code § 49076(a). The Code also independently permits school districts to release student records to contractors providing "outsourced institutional services or functions" to the districts "without written parental consent." *Id.* § 49076(a)(2)(G)(i).

Instructure provides services within this framework and complies with its obligations under federal and state privacy laws. Indeed, Instructure maintains publicly

---

[2] *See Complying with COPPA: Frequently Asked Questions*, FTC, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#top (last edited Jan. 2024) ("Where a school has contracted with an operator to collect personal information from students for the use and benefit of the school, and for no other commercial purpose, the ***operator is not required to obtain consent directly from parents under COPPA***, and can ***presume*** that the school's authorization for the collection of students' personal information is based upon the school having obtained the parents' consent.") (emphasis added).

available, clear privacy policies that explain what information Instructure collects when a school elects to use an Instructure product.[3]  *See* Ex. 1, Product Privacy Notice, § 1. In sum, schools decide how they will use Instructure's services and are responsible for ensuring that their collection and use of student personal information complies with applicable laws, including obtaining consent as required by COPPA.  *See* Ex. 2, Data Processing Addendum, §§ 2, 3.  Importantly, Instructure is clear that it only uses a student's personal information to provide services and "do[es] not sell or rent personal information to third parties."  *See* Ex. 1, Product Privacy Notice, § 4.  To the extent Instructure discloses information to certain third-party service providers, it does so only at the schools' direction to facilitate the provision of services to schools.  *See* Ex. 2, Data Processing Addendum, § 6.2.  Instructure does not permit third-party service providers to use personal information for their own advertising or marketing purposes. *See id.* § 5.2.  Instructure allows parents and schools to "review and correct" the information it has collected, to "delete it, and to tell [Instructure] to update it or stop using it."  *See* Ex. 3, COPPA Privacy Policy, p. 4.

## B.    Plaintiffs' Complaint.

Plaintiffs allege that Instructure collects various types of student data through its products.  Plaintiffs categorize this data into three buckets:  (1) student account information, (2) student activity data, and (3) device and usage data.  Compl. ¶ 56.

While acknowledging Instructure's relationship with schools and its partners, Plaintiffs fundamentally mischaracterize Instructure's basic business model.  Instead of a contractor providing services at its school customers' request, Plaintiffs erroneously depict Instructure as an entity that collects data for some independent monetization

---

[3]    These policies and other documents referenced in Instructure's motion are incorporated by reference because they "form[] the basis" of Plaintiffs' claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Mills v. Molina Healthcare, Inc.*, 2022 WL 17825534, at *5 (C.D. Cal. Dec. 8, 2022) (considering two documents incorporated by reference on 12(b)(6) motion); *see* Compl. ¶¶ 122–23.

purpose.  They allege Instructure "collects, combines, and analyzes" student data "for the purpose of building highly detailed and intimately personal dossiers of them, including their preferences, behaviors, and aptitudes, which they use to generate myriad purported predictions about a child's life," *id.* ¶¶ 75–85, conveniently leaving out that Instructure generates insights about students at the direction of and for the sole use of their schools.  Plaintiffs also claim that Instructure sells student data to third parties who use those products to "identify, target, manipulate, make decisions about, and otherwise control or monetize children and their personal information," *id.* ¶¶ 77, 86–113, ignoring that these third parties are (1) schools that control the students' data in the first place, and (2) other service providers to the schools with whom Instructure shares student data at the schools' request.

Plaintiffs' allegations do not focus on any specific Instructure product.  Instead, they identify more than a dozen different products without explaining what data each product allegedly collects, or with whom this data is purportedly shared.  *See id.* ¶ 81. Indeed, even as to their own children, Plaintiffs note only one product (Canvas LMS) they purportedly used.  They do not identify *which* (if any) of the other dozen-plus Instructure products their children allegedly used, let alone any details surrounding *what data* was allegedly collected by those products or *which third parties* that data is purportedly shared with.  *See id.* ¶¶ 263–72.

Plaintiffs aver that Instructure collects, uses, and shares student personal information without "effective" consent by a person with "proper" authority—ignoring that federal and state law dictate how and when consent is necessary in this context.  *Id.* ¶¶ 136–56, 273–79.

With respect to alleged harm to Plaintiffs, the Complaint offers only speculation and generalizations, claiming that Instructure's data practices have "invad[ed] their privacy," "compromised…relationships with various school administrators," left them "vulnerable to security risks, including identity theft," and "diminish[ed] the value of their data."  *Id.* ¶¶ 287–99.  Plaintiffs do not identify any actual data of their own that

has allegedly been shared or "compromised," nor do they plead any facts regarding how they would have otherwise planned to monetize their own data.

Plaintiffs assert nine claims against Instructure on behalf of a putative nationwide class of K-12 students who attended schools that used Instructure products, as well as a California subclass. Specifically, Plaintiffs assert: Violation of 42 U.S.C. § 1983 – Fourth Amendment (Count I); Violation of 42 U.S.C. § 1983 – Fourteenth Amendment (Count II); Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632 (Count III); Violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code §§ 502, *et seq.* (Count IV); Violation of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq.* (Count V); Violation of Cal. Civ. Code § 52.1 (Tom Bane Civil Rights Act) (Count VI); Invasion of Privacy—Public Disclosure of Private Facts (Count VII); Invasion of Privacy—Intrusion Upon Seclusion (Count VIII); and Unjust Enrichment (Count IX).

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The allegations must be sufficiently concrete to give the defendant an idea of "where to begin" in responding to the complaint. *Id*. at 565 n.10. For claims sounding in fraud, like under UCL's fraud prong, plaintiffs must also satisfy Rule 9(b)'s requirement that they "state with particularity the circumstances constituting fraud" by "identify[ing] the who, what, when, where, and how of the misconduct charged." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys. Inc.* 637 F.3d 1047, 1054–55 (9th Cir. 2011) (internal quotations omitted).

## IV.    ARGUMENT

### A.    Plaintiffs Fail to Plausibly Plead § 1983 Claims (Counts I and II).

A plausible § 1983 claim has two essential components: (1) a state action "under color of state law" that (2) "depriv[ed the plaintiff] of a right secured by the Constitution or laws of the United States." *Heineke v. Santa Clara Univ.* 965 F.3d 1009, 1012 (9th

1   Cir. 2020).  Because Plaintiffs have not adequately alleged either component, their

2   § 1983 claims fail.

3       ***First***, Plaintiffs cannot allege that Instructure—a private entity—acted "under

4   color of state law."  When addressing whether a private party acted under color of law,

5   courts "start with the ***presumption*** that private conduct ***does not*** constitute

6   governmental action."  *Sutton v. Providence St. Joseph Med. Ctr.* 192 F.3d 826, 835–

7   36 (9th Cir. 1999).  State action may be found only if "there is such a close nexus

8   between the State and the challenged action that seemingly private behavior may be

9   fairly treated as that of the State itself."  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*

10  590 F.3d 806, 812 (9th Cir. 2010) (citations and quotation marks omitted).

11      Here, Plaintiffs allege that Instructure is a state actor because:  (1) it "engages in

12  the conduct" with the "authority of state and local government or in excess of that

13  authority," (2) its conduct "is pursuant to, or purportedly pursuant to, contracts with

14  public schools and school districts," (3)  schools and school districts contract for

15  Instructure's services using government funds, (4) Instructure "deems itself a 'school

16  official' under federal law" (namely, FERPA), and (5) Instructure "has been authorized

17  by governmental entities to perform a function that is traditionally and exclusively a

18  public function performed by the government, namely, the collection and management

19  of public-school-related data, including education records and other student

20  information."  Compl. ¶¶ 330–34.  None of these allegations is sufficient to plead the

21  requisite "close nexus" between the state and Instructure's conduct.

22      As an initial matter, conclusory allegations that Instructure engages in conduct

23  "with the authority" of the state are insufficient.  It is black letter law that contracting

24  to provide services to public schools does not transform a private entity into a state

25  actor.  *See Pasadena Republican Club v. W. Just. Ctr.* 985 F.3d 1161, 1170 (9th Cir.

26  2021) ("[M]erely contracting with the government does not transform an otherwise

27  private party into a state actor").  Indeed, under Plaintiffs' theory, any service

28  provider—from textbook suppliers to cafeteria operators—that contracts with a public

school would become a state actor for purposes of § 1983.  Similarly, Plaintiffs' allegations regarding government funding and regulation do not establish a sufficiently close nexus.  "Receipt of government funds is insufficient to convert a private [entity] into a state actor," *Heineke*, 965 F.3d at 1013.  Indeed, even a school that derives "virtually all of [its] income . . . from government funding" does not qualify as a state actor.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982).

Plaintiffs' other allegations also fail to establish Instructure is a state actor.  Being a "school official" under FERPA (an entirely different legal standard) does not qualify.  The school official status is a category created with respect to data sharing, not transforming the recipient into a state actor.

Even when an entity becomes a state actor for some purposes (which is not even the case here), the Ninth Circuit has made clear that "[u]nder § 1983, a state's statutory characterization of a private entity as a public actor for some purposes is not necessarily dispositive with respect to all of that entity's conduct." *Caviness*, 590 F.3d at 814.  The court held that the defendant *Caviness*, a charter school, was ***not*** a state actor even though the school provided educational services directly to students and was designated as a "public school" under Arizona statutes.  It would be difficult to conceive how Instructure, which provides only certain software services to schools, would be considered a state actor when a full charter ***school*** was not.

Further, Plaintiffs cannot plausibly allege that student software is a public function that is traditionally and exclusively the prerogative of the state.  The provision of technology services to public schools does not demonstrate that "private individuals or groups are endowed by the State with powers or functions governmental in nature." *Id.*  Here, too, *Caviness* is on point.  There the court rejected the plaintiff's argument that a charter school performs a public function merely because it serves the public.  *Id.* at 815.  So too here, with even more force.

***Second***, Plaintiffs have not plausibly alleged a cognizable deprivation of a Fourth or Fourteenth Amendment right.  These protections are typically invoked in markedly

different contexts, not the collection of data for educational purposes.  "Only rarely" has the Fourth Amendment been applied to "noncriminal investigations." *United States v. Attson*, 900 F.2d 1427, 1430 (9th Cir. 1990).  "Even rarer are the instances" where the Amendment has been extended to "noncriminal *noninvestigatory* governmental conduct."  *Id.*  And when a plaintiff sues a private party under the Fourth Amendment for its noncriminal non-investigatory data collection, there is even more difficulty, because the plaintiff must allege the private party had "the intent to assist the government in its investigatory or administrative purposes, and *not for an independent purpose*."  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 924 (9th Cir. 2001) (emphasis added).  Here, Plaintiffs have not alleged that Instructure acted with intent to assist the government in any investigatory or administrative purposes.  Nor could they, as Plaintiffs do not even allege the existence of any government investigation.  Plus, it is difficult to imagine how Plaintiffs could allege a legitimate expectation of privacy in information they knowingly must share with their schools.  Courts have repeatedly held that there can be no Fourth Amendment violation in these circumstances.  *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.") (collecting cases).

Similarly, Plaintiffs fail to allege a plausible deprivation of their rights under the Fourteenth Amendment.  To begin, the Fourteenth Amendment does not explicitly provide for a right to privacy.  *See Fugate v. Phoenix Civ. Serv. Bd.* 791 F.2d 736, 738 (9th Cir. 1986).  Although courts have recognized such a right "as one aspect of the liberty protected by" the Amendment, *id*. (internal quotation omitted), the scope of that atextual right has been tightly limited, *see Paul v. Davis*, 424 U.S. 693, 713 (1976) ("[P]ersonal rights found in this guarantee of personal privacy must be limited to those which are fundamental or implicit in the concept of ordered liberty.") (internal quotation

omitted).  Only "highly sensitive" personal information can implicate a Fourteenth Amendment right to privacy, which Plaintiffs do not allege.  *See Doe v. Bonta*, 101 F.4th 633, 637–38 (9th Cir. 2024) (internal quotation omitted) (explaining that "medical records relating to abortion," "medical diagnoses, reports of abuse, substance-abuse treatment records," and "information regarding sexual activity" are within this limited scope, and "name, age, and employment history, and the charges against [a person]" and "biographical data" are not).

Plaintiffs' failure to allege ***any*** details surrounding what "highly sensitive" personal information was supposedly collected and disclosed to third parties should end the inquiry.  But even assuming Instructure somehow collected their "highly sensitive" personal information, they still cannot plead a deprivation of their Fourteenth Amendment right to privacy, which "is a conditional right which may be infringed upon a showing of proper governmental interest." *A.C. by & through Park v. Cortez*, 34 F.4th 783, 787 (9th Cir. 2022).  Schools and students have a strong interest in the use of technology to manage voluminous student records and facilitate communication between teachers, students, and parents.  And as Plaintiffs acknowledge, Instructure has in place various policies to ensure that schools—not Instructure—ultimately decide what data is collected and shared, and with whom.  On the other hand, while Plaintiffs speculate in the abstract about the risk of identity theft, they do not and cannot allege their information has actually been misused.  *See* Compl. ¶ 220 (speculating about risks of cybercrimes based on incident involving another company).  Given Plaintiffs' alleged privacy interest and the potential for harm is low, the need for access under these circumstances outweighs the speculation of harm.  Therefore, Plaintiffs cannot state a claim for violation of the Fourteenth Amendment.

The Court should dismiss Plaintiffs' § 1983 claims.

**B.    California Plaintiffs' CIPA Claim (Count III) Fails as a Matter of Law.**

In Count III, California Plaintiffs bring a claim under sections 631(a) and 632(a) of CIPA.  CIPA "prohibit[s] the unauthorized interception of a communication and the manufacture, possession, or sale of any eavesdropping device."  *See Jackson v. Amazon.com, Inc.* 559 F. Supp. 3d 1132, 1146 (S.D. Cal. 2021), *aff'd*, 65 F.4th 1093 (9th Cir. 2023).  Section 631(a) prohibits the unauthorized interception or "read[ing]" or "attempt[ing] to read" of "the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable."  Cal. Penal Code § 631(a).   Section 632(a) prohibits the unauthorized use of an "electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication . . . ."  Cal. Penal Code § 632(a).  The Court should dismiss California Plaintiffs' CIPA claims for three reasons.

***First***, California Plaintiffs' allegations under CIPA give Instructure "little idea where to begin," because they provide "no clue" as to "specific time, place or person involved in" the alleged interception.  *Twombly*, 550 U.S. at 565 n.10.  Indeed, Plaintiffs do not even make clear what their theory of interception is, as they do not allege who, using what device, has intercepted what communication.  Their allegations hinting at interception center around Instructure's alleged "data sharing agreements" with its partners, Compl. ¶¶ 86–113, but data sharing does not equal interception.  For interception to happen, there must be an underlying communication—a "conversation or exchange shared between two or more participants."  *Gruber v. Yelp Inc.* 55 Cal. App. 5th 591, 607 (2020).  By just vaguely alleging "data sharing," California Plaintiffs give no clue as to what communications underlie their CIPA claim.[4]

---

[4]   California Plaintiffs also cannot allege a violation of either section 631(a) or 632(a) to the extent that their claims are premised on the collection of device and usage data.  *See* Compl. ¶ 56.  Courts have repeatedly held that this type of data, such as browser type and operating system, are not "communications" within the meaning of CIPA.  *See Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26,

**Second**, California Plaintiffs cannot allege a CIPA violation as to Instructure because Instructure was a party to any alleged communication between California Plaintiffs and its products.  While it is unclear what California Plaintiffs' theory about eavesdropping really is, it is legally implausible for them to allege that Instructure attempted to learn the contents of their communications *with Instructure's own websites and products* because "[a] party to a communication can record it (and is not eavesdropping when it does)." *Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021); *see Garcia v. Build.com, Inc.,* 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023) (dismissing CIPA claims because "the "parties to a conversation cannot eavesdrop on their own conversations").

**Third**, California Plaintiffs cannot allege a violation of section 631(a) because they do not allege that their purported communications were "read" or "attempted to [be] read" while "in transit." *See Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (granting summary judgment on CIPA claim where "nothing in the record plausibly indicates that [the defendant analytics provider] **reads or attempts to read the contents of the communication <u>while they are in transit</u>**") (emphasis added); *Boulton v. Community.com, Inc.,* 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal where complaint only alleged that defendant read plaintiff's texts *after* they were received).  Aside from a conclusory allegation that "Instructure shares student data in real time and/or near-real time," Compl. ¶ 94, the Complaint includes no factual allegations from which the Court can infer that real-time reading or understanding of the purported communications occurred.  *See Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (explaining that "in transit" requires allegations about "in real time").  Indeed, the Complaint fails to allege that any other authorized vendor

2024) (holding that "it strains credulity" to interpret "communication" to include information regarding the device's screen resolution, keyboard language, or how the user was connected to the internet).

"read" or "attempted to read" the contents of the communications in real time. At most, the Complaint alleges that Instructure's API may give other authorized vendors "access" to Canvas data, Compl. ¶ 99, but mere access does not equate to "read[ing]" or "learn[ing] the contents" of the data, much less while it is "in transit." *See Torres*, 2025 WL 1135088, at *5 (noting that access to data or analysis of inputs "has no bearing on whether Defendants read the communications while they were in transit."). Accordingly, under the recent *Torres* decision and related precedent, Plaintiffs' CIPA claim must be dismissed.

### C.  California Plaintiffs Do Not Sufficiently Plead That Instructure Violated CDAFA (Count IV).

California Plaintiffs' CDAFA claim is a prime example of the expansive and untenable scope of their Complaint. In an effort to shoehorn their allegations into this cause of action, Plaintiffs re-characterize ordinary data processing authorized and directed by schools as violations of a statute "enacted to combat 'computer crime' and hacking." *Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (quoting Cal. Penal Code § 502(a)).

As an initial matter, California Plaintiffs lack standing to assert this claim because their vague and conclusory allegations regarding damages or loss fail to satisfy statutory standing requirements. To privately enforce this "otherwise . . . criminal" statute, "a plaintiff must plead that she 'suffers damage or loss' due to the criminal violation." *Heiting*, 709 F. Supp. 3d at 1020 (quoting § 502(e)). Consistent with its focus on computer crime and hacking, the statute specifies that "[c]ompensatory damages" recoverable through such an action "shall include . . . expenditure . . . incurred . . . to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." § 502(e)(1). California Plaintiffs offer only conclusory allegations that Instructure "has caused loss" to Plaintiffs, that Instructure has "unfairly diminished the value" of Plaintiffs' information, and that "Instructure's actions caused damage to and loss of students' property." Compl. ¶¶ 248,

250, 400. Courts have repeatedly held that similar conclusory allegations are insufficient to assert a CDAFA claim. *See Shah v. Cap. One Fin. Corp.* 2025 WL 714252, at *8 (N.D. Cal. Mar. 3, 2025) (a "diminution of the value of [plaintiffs'] private and personal information [does] not confer standing" under CDAFA); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) ("[L]oss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data" is insufficient for statutory standing under CDAFA). And most courts that have considered the question agree that only those plaintiffs who have suffered "some damage to the computer system, network, program, or data contained on that computer" can sue under CDAFA. *See Heiting*, 709 F. Supp. 3d at 1021. Because California Plaintiffs plead no such damage, their CDAFA claim should be dismissed for lack of standing.

Moreover, Plaintiffs cannot state a CDAFA claim because they do not adequately allege that Instructure "accessed" or "used" student data without permission. To state a plausible CDAFA claim, Plaintiffs must allege that Instructure "[k]nowingly access[ed] and *without permission* [took], cop[ied], or [made] use of any data from a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2) (emphasis added). Here, the California Plaintiffs voluntarily provided their information to Instructure, which their schools contractually authorized Instructure to use and share with other school vendors on the students' behalf. Hence, Plaintiffs' CDAFA claim must be dismissed.

### D.    California Plaintiffs Fail to State a UCL Claim (Count V).

California Plaintiffs' UCL claim also fails at the gate because without economic harm, they fail to plead statutory standing. To bring a private action under the UCL, Plaintiffs must have "suffered injury in fact and [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Standing under the UCL is "substantially narrower than federal standing under article III," in that it asks that plaintiffs "demonstrate some form of ***economic injury***." *Griffith v. TikTok, Inc.*, 697 F.

Supp. 3d 963, 976 (C.D. Cal. 2023) (emphasis added). Plaintiffs, however, only allege two types of monetary or property damage: loss of control over their data, and diminution of its value. Compl. ¶ 412. Plaintiffs' conclusory allegation that their data and information is valuable simply because Instructure allegedly used it, does not satisfy the UCL's standing requirement. Other courts have dismissed virtually identical UCL claims on this basis. *See, e.g.*, *Cherkin v. PowerSchool Holdings, Inc.,* 2025 WL 844378, at *5 (N.D. Cal. Mar. 17, 2025) (dismissing similar UCL claim against another EdTech company for lack of statutory standing). The Court should do the same here.

Plaintiffs' UCL claim fails for additional reasons. Under the UCL's "unlawful" prong, Plaintiffs must allege a violation of another "borrowed" law. *Davis v. HSBC Bank Nev., N.A.* 691 F. 3d 1152, 1168 (9th Cir. 2012) (internal citations omitted). Plaintiffs' UCL claim is derivative and redundant of Plaintiffs' other statutory claims. Because those predicate claims fail, Plaintiffs "unlawful" theory of liability also fails. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022).

Under the UCL's "fraudulent" prong, Plaintiffs must plead with particularity under Rule 9(b) the "circumstances surrounding" the alleged misrepresentations, including "when [they were] exposed to them." *Kearns v. Ford Motor Co.,* 567 F. 3d 1120, 1126 (9th Cir. 2009). California Plaintiffs cannot meet this standard because they do not allege they actually read and relied on any specific privacy representations. *See Cherkin*, 2025 WL 844378, at *5 (dismissing similar claims).

Finally, Plaintiffs' UCL claim under the "unfair" prong is entirely derivative of both the unlawful and fraudulent prongs. *Compare* Compl. ¶¶ 410–11 *with id.* ¶ 408. Because they fail to state a UCL claim under the other two prongs, their claim under this prong fails too. *See Hammerling*, 615 F. Supp. 3d at 1094.

### E. California Plaintiffs Cannot State a Claim Under the Tom Bane Civil Rights Act (Count VI).

California Plaintiffs' allegations are fundamentally misaligned with the purpose of the Tom Bane Act, which was enacted to address hate crimes. *Reese v. Cnty. of*

1    *Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).  To state a claim pursuant to section

2    52.1 of the Tom Bane Civil Rights Act, "a plaintiff must show (1) intentional

3    interference or attempted interference with a state or federal constitutional or legal right,

4    and (2) the interference or attempted interference was by threats, intimidation or

5    coercion."  *Est. of Valentine v. Cnty. of Merced*, 2024 WL 4374303, at *40 (E.D. Cal.

6    Oct. 2, 2024).

7    California Plaintiffs fail to explain how Instructure's alleged conduct could

8    violate their civil rights when FERPA explicitly authorizes Instructure to process data

9    on behalf of schools.  But, more fundamentally, Plaintiffs' claim should be dismissed

10   because they fail to plead "[t]hreats, intimidation, or coercion"—"[t]he essence of a

11   Bane Act claim."  *Schmid v. City & Cnty. of S.F.*, 60 Cal. App. 5th 470, 482 (2021).

12   That essence is nowhere to be found in Plaintiffs' sole conclusory allegation that

13   Instructure interfered with their constitutional rights "by coercion in conditioning a

14   child's receipt and use of required educational services on the provision of vast troves

15   of their personal and private information."  Compl. ¶ 418.  Coercion under the statute

16   must involve some "fear-inducing conduct" to make the violation "sufficiently

17   egregious to warrant enhanced statutory remedies" designed for "hate crimes."  *Cnty.*

18   *Inmate Tel. Serv. Cases*, 48 Cal. App. 5th 354, 372 (Cal. Ct. App. (2020).  California

19   Plaintiffs fall far short of that criterion and the Court should dismiss their claim.  *See*

20   *Schmid*, 60 Cal. App. 5th at 482 (dismissing Bane Act claim where complaint failed to

21   allege anything that might reasonably be construed as threats, intimidation, or coercion).

22   **F.    Plaintiffs' Common Law Claims (Counts VII Through IX) Should Be
         Dismissed for Failure to Allege What Law Governs.**

23   In addition to their federal and state statutory claims, Plaintiffs assert a hodge

24   podge of common law claims for public disclosure of private facts, intrusion upon

25   seclusion, and unjust enrichment on behalf of a nationwide class.  All of Plaintiffs'

26   common law claims fail.  For starters, Plaintiffs have not identified which state's law

27   governs each of these claims.  This deficiency is reason alone for dismissal.  *See*

28

1    *Kavehrad v. Vizio, Inc.,* 2022 WL 16859975, at *3 (C.D. Cal. Aug. 11, 2022). "[G]iven

2    the variance in state laws," "failure to allege which state law governs prevents an

3    assessment of whether the claims are adequately pleaded." *Id.*

4         Nor can Plaintiffs assert generalized common law claims on behalf of a

5    nationwide class.  It is well-established that common law causes of action vary

6    materially among states, and these differences in state law defeat predominance for a

7    single nationwide class even at the pleading stage.  *See Mazza v. Am. Honda Motor Co.*,

8    Inc., 666 F.3d 581, 591 (9th Cir. 2012); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*,

9    534 F. Supp. 3d 1067, 1120–22 (N.D. Cal. 2021) (dismissing nationwide claim for

10   unjust enrichment at the pleading stage in light of *Mazza*); *see also Fernandez-Wells v.*

11   *Beauvais*, 983 P.2d 1006, 1008 (N.M. Ct. App. 1999) ("[T]he extent of the required

12   publicity to support a claim of public disclosure of private facts varies from jurisdiction

13   to jurisdiction."); *Opperman v. Path, Inc.,* 2016 WL 3844326, at *9 (N.D. Cal. July 15,

14   2016) (noting there are material differences in law between states on an intrusion upon

15   seclusion claim).  Because permitting Plaintiffs' common law claims on behalf of a

16   nationwide class will require the application of myriad state laws, undermining the

17   efficiency and manageability of a class action, those claims should be dismissed.

18        Even assuming California law applies to Plaintiffs' common law claims, the

19   Court should still dismiss them for multiple independent reasons stated below.

20   **G.    Plaintiffs Fail to Plead Common Law Claims for Invasion of Privacy**

21   **        (Counts VII and VIII).**

22        Plaintiffs fail to state a claim for invasion of privacy under either the public

23   disclosure theory or the intrusion upon seclusion theory.

24        To plead a public disclosure claim, Plaintiffs must allege "(1) public disclosure

25   (2) of a private fact (3) which would be offensive and objectionable to the reasonable

26   person and (4) which is not of legitimate public concern." *Shulman v. Grp. W Prods.*

27   *Inc.,* 955 P.2d 469, 478 (Cal. 1998).  To meet this test, the disclosure at issue must

28   reveal intimate details of the plaintiff's life. *Taus v. Loftus*, 40 Cal. 4th 683, 718 (2007).

The facts disclosed must be matters where plaintiff had an "objectively reasonable expectation of privacy." *Nabeel v. Taylor Swift Prods. Inc.* 2024 WL 4444483, at *3 (C.D. Cal. July 31, 2024) (internal quotation omitted).

**First**, Plaintiffs cannot state a plausible claim for public disclosure of private facts because the alleged disclosures they complain of are not "public." To be actionable, the disclosure must be "widely published and not confined" to "limited circumstances." *Hill v. Nat'l Collegiate Athletic Ass'n,* 865 P.2d 633, 648–49 (Cal. 1994). And to be widely published, the matter must be "communicat[ed] [] to the public at large, or to so many persons that the matter must be regarded as **substantially certain** to become one of public knowledge." *In re Anthem, Inc. Data Breach Litig.* 162 F. Supp. 3d 953, 1004 (N.D. Cal. 2016) (emphasis added). Plaintiffs do not plead any facts from which the Court can infer that their information was "widely published." Although Plaintiffs generally allege Instructure discloses information to "more than a thousand" partners, Compl. ¶ 86, Plaintiffs do not contend that any specific student's information was disclosed to all of Instructure's partners (as opposed to the specific partners engaged and authorized by their school) or that any of these entities then proceeded to re-share their information to the public. Instead, Plaintiffs vaguely claim that Instructure's alleged disclosures were "so numerous that they amount to public disclosures," *id.* ¶ 426. But Plaintiffs cite no support for this novel theory. There is no numerical threshold that renders disclosures to privately contracted business partners the equivalent of making information "public." As Plaintiffs' Complaint acknowledges, any alleged disclosure was at most confined to limited circumstances, involving private entities with a private partnership or business relationship with Plaintiffs' schools. *Id.* ¶ 87. Plaintiffs have not and cannot identify any actual disclosure of their alleged personal information to the public.

**Second**, Plaintiffs have no objectively reasonable expectation of privacy in personal information they voluntarily share with legally authorized vendors hired by their schools. For similar reasons, Instructure's alleged conduct was not offensive or

reasonably objectionable.  To satisfy this element, Plaintiffs must plead that they have "an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source."  *In re Google, Inc. Priv. Pol'y Litig.,* 2013 WL 6248499, at *15 (N.D. Cal. Dec. 3, 2013) (internal quotations omitted).  "A 'reasonable' expectation of privacy 'is an objective entitlement founded on broadly based and widely accepted community norms.'"  *Hill*, 865 P. 2d at 655.  As the Complaint acknowledges, "[s]chools have always collected certain personal information belonging to students and their parents in order to provide educational services."  Compl. ¶ 10.  It is consistent with community norms for schools to keep students' school records such as enrollment data, assignments, grades, contact information, disciplinary records, medical information, and communications with parents.  As evidenced by laws like FERPA, community norms also permit schools to hire contractors like Instructure to maintain and process that information.  When Plaintiffs voluntarily upload their personal information onto Instructure's platforms to share with their teachers and school administrators, community norms do not allow them to have a reasonable expectation of privacy vis-à-vis their schools or government-sanctioned contractors like Instructure.  Without a reasonable expectation, Plaintiffs cannot allege a private fact, let alone a public disclosure thereof.

Plaintiffs likewise fail to plead a claim for intrusion upon seclusion.  For intrusion upon seclusion, Plaintiffs must allege that Instructure "(1) intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,] and (2) the intrusion occur[red] in a manner highly offensive to a reasonable person."  *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 601 (9th Cir. 2020) (internal quotation omitted).  Beyond conclusory statements, Plaintiffs do not plead a reasonable expectation of privacy in the data and information they knowingly provide to their own schools.  Rather, as discussed above, it is reasonable and within accepted community norms for schools to record the very information that Plaintiffs allege is private, and for schools to share that data (as expressly contemplated by state

and federal statutes) with contractors like Instructure.  In addition, because Plaintiffs know their schools use Instructure products (and in fact use them directly themselves), they possess "advance notice" of any information-sharing, which makes the expectation of privacy in this context unreasonable.

Moreover, to be "highly offensive," the alleged intrusion must be "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an *egregious breach* of the social norms underlying the privacy right." *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).  Again, Plaintiffs do not specify what information Instructure collects from them personally.  *See* Compl. ¶¶ 263–72. Their allegations thus "provide no sufficient facts that would allow this Court to assess the plausibility of [their] claims," necessitating their dismissal.  *Obeng-Amponsah v. Don Miguel Apartments*, 2017 WL 11557563, at *1 (C.D. Cal. Apr. 3, 2017).[5]

Plaintiffs' invasion of privacy claims should be dismissed.

### H.    Plaintiffs' Unjust Enrichment Claim (Count IX) Fails as a Matter of Law.

The Court should dismiss Plaintiffs' unjust enrichment claim because "California does not recognize unjust enrichment as an independent cause of action," but rather a remedy when remedies at law are inadequate to address plaintiffs' harms.  *Griffith v. TikTok, Inc.* 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023).  Ample state and federal authority holds that "in California, there is not a standalone cause of action for

---

[5]    Even assuming Plaintiffs' general allegations about what information Instructure's products *may* collect, *see* Compl. ¶ 56, applied to them personally, much of that information does not egregiously breach social norms.  *See, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosing "unique device identifier number, personal data, and geolocation information" to third parties does not constitute an egregious breach of social norms).  Moreover, the obvious nature of any metadata collection, which occurs when Plaintiffs choose to knowingly interact with Instructure's products, defeats Plaintiffs' offensiveness allegation.  *See Sheehan v. S.F. 49ers, Ltd.*, 201 P.3d 472, 478 (Cal. 2009) ("If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person'").

'unjust enrichment.'" *Id.* (colleting cases). Here, Plaintiffs merely offer a conclusory allegation that they "may not have an adequate remedy at law," but plead no facts to support their bare assertion. Compl. ¶ 464.

Additionally, Plaintiffs' unjust enrichment claim should be dismissed because they have not plausibly alleged that Instructure was unjustly enriched by Plaintiffs. Instructure contracts with schools to provide education technology services. Plaintiffs are not Instructure customers and never conferred any monetary benefit or value to Instructure. And Plaintiffs cannot save their claim by alleging that Instructure nevertheless obtained a "benefit" from receiving Plaintiffs' data; courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value. *See Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012) (finding such allegations "too abstract and speculative to support Article III standing").

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated:  June 2, 2025

/s/ Martin L. Roth
Robyn E. Bladow (CA Bar No. 205189)
rbladow@kirkland.com
Kirkland & Ellis LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone:  (213) 680-8400

Mark McKane, P.C. (CA Bar No. 230552)
mark.mckane@kirkland.com
Kirkland & Ellis LLP
555 California Street, 27th floor
San Francisco, CA 94104
Telephone:  (415) 439-1400

Martin L. Roth, P.C. (*pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky, P.C. (*pro hac vice*)
alyssa.kalisky@kirkland.com
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone:  (312) 862-2000

Olivia Adendorff, P.C. (*pro hac vice*)
olivia.adendorff@kirkland.com
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
Telephone:  (214) 972-1770

*Counsel for Defendant Instructure, Inc.*

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Defendant Instructure, Inc. certifies that

3

this brief contains 6,980 words, which complies with the word limit of L. R. 11-6.1.

4

5

*/s/ Martin L. Roth*
Martin L. Roth

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28