Melisa A. Rosadini-Knott
mrosadini@peifferwolf.com
(California Bar No. 316369)
**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010-1923
323-982-4109

Andrew Liddell*
andrew.liddell@edtech.law
**EDTECH LAW CENTER PLLC**
P.O. Box 300488
Austin, Texas 78705
(737) 351-5855

[*additional counsel listed on signature page*]

*Counsel for Plaintiffs & the Proposed Classes*

* *pro hac vice* granted

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE HERNANDEZ-SILVA and MICHAEL SILVA, on behalf of their minor children M.C. 1 and M.C. 2, HEIDI SAAS, on behalf of her minor child M.C. 3, and JULIANNA LORENZEN, on behalf of her minor children M.C. 4 and M.C. 5, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INSTRUCTURE, INC.,<br><br>Defendant. | Civ. No. 2:25-cv-02711-SB-MAA<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO INSTRUCTURE'S MOTION TO DISMISS**<br><br><br>Date:        August 1, 2025<br>Time:        8:30 a.m.<br>Courtroom:  6C<br>Judge:       Hon. Stanley Blumenfeld, Jr. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION....................................................................................................1

ARGUMENT ...........................................................................................................2

I.    Plaintiffs state claims under Section 1983. ..................................................2

      A. Plaintiffs allege that Instructure is a state actor.  ..................................2

          1.  Instructure engages in a public function. ...................................2

          2.  Instructure acts jointly, and is entwined, with public schools.  ....4

      B. Plaintiffs allege a deprivation of constitutional rights. ..........................7

          1.  Plaintiffs allege a Fourth Amendment violation..........................7

          2.  Plaintiffs allege a Fourteenth Amendment violation. ................10

II.    Plaintiffs state a CIPA claim. ....................................................................13

III.    Plaintiffs state a CDAFA claim. ................................................................14

IV.    Plaintiffs state a UCL claim. .....................................................................15

      A. Plaintiffs allege an injury under the UCL. ...........................................15

      B. Plaintiffs allege violations under all three prongs of the UCL.  ...........16

V.    Plaintiffs state a claim under the Tom Bane Act. ......................................17

VI.    Instructure's choice-of-law arguments do not support dismissal..............19

VII.    Plaintiffs state common-law privacy claims. ............................................20

      A. Plaintiffs allege public disclosure of private facts...............................20

      B. Plaintiffs allege intrusion upon seclusion. ...........................................22

VIII.    Plaintiffs state a claim for unjust enrichment. ..........................................22

CONCLUSION ......................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*A.B. ex rel v. Google LLC*,
    737 F. Supp. 3d 869 (N.D. Cal. 2024) ...................................................15-16

*Am. Title. Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) .......................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................1-2

*Biden v. Ziegler*,
    737 F. Supp. 3d 958 (C.D. Cal. 2024) ......................................................15

*B.K. v. Desert Care Network*,
    2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ............................................19

*Brannum v. Overton Cnty. Sch. Bd.*,
    2006 WL 8445313 (M.D. Tenn. June 20, 2006) ........................................5

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
    531 U.S. 288 (2001) ................................................................................2, 7

*Brown v. Google LLC*,
    2021 WL 6064009, *15 (N.D. Cal. Dec. 22, 2021) ..................................16

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ......................................................15

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (2021) .......................................................................16

*Campbell v. Feld Ent., Inc.*,
    75 F. Supp. 3d 1193 (N.D. Cal. 2014).......................................................18

*Carpenter v. United States*,
    585 U.S. 296 (2018) ................................................................... 9

*Caviness v. Horizon Community Learning Center, Inc.*,
    590 F.3d 806 (9th Cir. 2010) ....................................................... 3-4

*Cherkin v. PowerSchool Holdings, Inc.*,
    2025 WL 844378 (N.D. Cal. Mar. 17, 2025) .......................... *passim*

*Cnty. Inmate Tel. Serv. Cases*,
    48 Cal. App. 5th 354 (2020) ......................................................... 18

*D'Angelo v. FCA US, LLC*,
    726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........................................ 13

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) ...................................................... 17

*Doe by & through Tanis v. Cnty. of San Diego*,
    576 F. Supp. 3d 721 (S.D. Cal. 2021) .......................................... 12

*Doe ex rel. Doe v. Hawaii Dep't of Educ.*,
    334 F.3d 906 (9th Cir. 2003) .......................................................... 8

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) .......................................... 11

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...................................................... 22

*Frasco v. Flo Health, Inc.*,
    2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .............................. 14

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................... 14

*Hashemi v. Bosley, Inc.*,
    2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ............................... 20

*Hasso v. Hapke*,
    227 Cal. App. 4th 107 (2014)................................................................17

*Heineke v. Santa Clara Univ.*,
    965 F.3d 1009 (9th Cir. 2020) ...........................................................4

*In re Crawford*,
    194 F.3d 954 (9th Cir. 1999) ......................................................10, 12

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ...........................................................15

*In re Google Location Hist. Litig.*,
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ..............................................23

*In re Google RTB Consumer Priv. Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. 2022) ..............................................21

*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ..............................................16

*In re T.F.*,
    16 Cal. App. 5th 202 (2017)..............................................................18

*In re Toyota RAV4 Hybrid Fuel Tank Litigation*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) ............................................17

*Khan v. CitiMortgage, Inc.*,
    975 F. Supp. 2d 1127, 1145 (E.D. Cal. 2013) .............................16-17

*Kirtley v. Rainey*,
    326 F.3d 1088 (9th Cir. 2003) ............................................................3

*Kavehrad v. Vizio, Inc.*,
    2022 WL 16859975 (C.D. Cal. Aug. 11, 2022) ................................20

*Leos v. City of El Monte*,
    2024 WL 4761422 (C.D. Cal. Oct. 28, 2024) ..................................18

*Lorentzen v. Kroger Co.*,
    532 F. Supp. 3d 901 (C.D. Cal. 2021)................................................................2

*Lovejoy v. AT&T Corp.*,
    92 Cal. App. 4th 85 (2001)..............................................................................17

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................23

*McIntyre v. Am. Honda Motor Co.*,
    739 F. Supp. 3d 776 (C.D. Cal. 2024)..............................................................19

*McVicar v. Goodman Glob., Inc.*,
    1 F. Supp. 3d 1044 (C.D. Cal. 2014)................................................................16

*M.H. v. Cnty. of Alameda*,
    90 F. Supp. 3d 889 (N.D. Cal. 2013) ............................................................18-19

*Minx Int'l, Inc. v. M.R.R. Fabric*,
    2015 WL 12645752 (C.D. Cal. Feb. 11, 2015)..................................................23

*Naffe v. Frey*,
    789 F.3d 1030 (9th Cir. 2015) ...........................................................................2

*Olson v. Cnty. of Grant*,
    127 F.4th 1193 (9th Cir. 2025) ...........................................................................8

*Owens v. Smith, Gambrell & Russell Int'l, LLP*,
    2024 WL 3914663 (C.D. Cal. May 30, 2024)....................................................16

*Pasadena Republican Club v. W. Just. Ctr.*,
    985 F.3d 1161 (9th Cir. 2021) ............................................................................4

*Patrick v. Success Acad. Charter Sch., Inc.*,
    354 F. Supp. 3d 185 (E.D.N.Y. 2018) ................................................................4

*Rasidescu v. Midland Credit Mgmt., Inc.*,
    496 F.Supp.2d 1155 (S.D. Cal. 2007) ...............................................................20

*Rawson v. Recovery Innovations, Inc.*,
    975 F.3d 742 (9th Cir. 2020) ................................................................. 2-4, 7

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) .................................................................................. 4

*Schmitz v. Asman*,
    2022 WL 2340614 (E.D. Cal. June 29, 2022) ....................................... 19

*Softketeers, Inc. v. Regal W. Corp.*,
    2023 WL 2024701 (C.D. Cal. Feb. 7, 2023) .......................................... 23

*The People of the State of California, v. Chiquita Canyon, LLC*,
    2025 WL 1555497 (C.D. Cal., May 30, 2025) ........................................ 7

*Tovmasyan v. Target Corp.*,
    2025 WL 1288020 (C.D. Cal. May 2, 2025).................................... 19-20

*United States v. Attson*,
    900 F.2d 1427, 1430 (9th Cir. 1990) .................................................... 7-8

*United States v. E. Mun. Water Dist.*,
    2008 WL 11333849 (C.D. Cal. Apr. 3, 2008) ............................. 11-12, 21

*Valenzuela v. Nationwide Mut. Ins. Co.*,
    686 F. Supp. 3d 969 (C.D. Cal. 2023) .................................................. 14

*Varo v. Los Angeles Cnty. Dist. Attorney's Off.*,
    473 F. Supp. 3d 1066 (C.D. Cal. 2019)...................................... 10, 12-13

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001) .................................. 17, 23

*West v. Atkins*,
    487 U.S. 42 (1988).............................................................................. 2-3

## Federal Statutes and Codes                                              Page(s)

42 U.S.C. § 1983 ........................................................................................ 2

Children's Online Privacy Protection Act ("COPPA"),
    15 U.S.C. §§ 6502, *et seq.*, ................................................................. 6

Family Educational Rights and Privacy Act ("FERPA"),
    34 CFR §99.31(a)(1)(A) ................................................................... 6-7

## State Statutes and Codes                                                Page(s)

California Invasion of Privacy Act ("CIPA"),
    Cal. Penal Code §§ 631, 632 ........................................................ 13-14

Comprehensive Computer Data Access and Fraud Act ("CDAFA"),
    Cal. Penal Code §§ 502, *et seq* ..................................................... 15

Tom Bane Act,
    Cal. Civ. Code § 52.1 .................................................................... 17

**INTRODUCTION**

Plaintiffs allege that Defendant Instructure, Inc. ("Instructure") violates the fundamental rights of children in the compulsory setting of K–12 education. Consistent with its invasive data practices, Instructure's motion to dismiss ("Motion") is hostile to children's rights, including their right to access the courts.[1]

Instructure argues that laws that enhance student privacy actually undermine it— specifically, by letting a private company take and use personal information from students by any means, as long as the company has a contract with the school. That is a radical position unsupported by any law, especially laws enacted to protect children's information and parents' rights over that information.

Families may not be stripped of their basic rights in exchange for the education to which they are legally entitled. As stated in the Amended Complaint, "[b]y sending their children to school as is their right and duty, [parents] do not forfeit their right to decide what personal information may be extracted from their children and how that information may be used." ECF 33, ¶ 12.[2]

This cannot be the new cost of education. Instructure may provide data services to schools, but it may not violate the rights of children in doing so by surreptitiously exploiting their data for commercial gain.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) challenge, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] Instructure maligns the motives of Plaintiffs and their counsel in bringing this lawsuit, Motion at 1, but challenging industry-wide abuses in court is neither new nor impermissible. Consumer protection lawsuits drove reform of the tobacco, automobile, asbestos, and opioid industries, and assume special importance when aimed at protecting children from systemic harm.

[2] All references to the Complaint are cited as "¶."

570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] court must accept all well-pleaded factual allegations as true, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 906 (C.D. Cal. 2021) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I.    Plaintiffs state claims under Section 1983.

To establish a claim under 42 U.S.C. § 1983 ("Section 1983"), Plaintiffs must show that Instructure deprived them of a constitutional right and acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Dismissal is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of state action. *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

State action exists "if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (cleaned up).

There are four tests for identifying state action: public function, joint action, governmental coercion, and governmental nexus or "entwinement." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020); *Brentwood*, 531 U.S. at 296 (equating "entwinement" and "governmental nexus"). Whether these tests are "actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry" remains unresolved. *Rawson*, 975 F.3d at 747 (cleaned up). "At bottom, the inquiry is always whether the defendant has exercised power

possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. at 748 (cleaned up).

### A. Plaintiffs allege that Instructure is a state actor.

Plaintiffs' allegations, taken as true, support an inference that Instructure is a state actor under the public-function, joint-action, and entwinement tests.

### 1. Instructure engages in a public function.

The public-function test is satisfied on a showing that the function at issue is both traditionally and exclusively governmental. *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003).

Plaintiffs allege that Instructure performs a public function in providing state-required education services to public schools, including course management, assignment delivery, and grading; communication between teachers, students, and parents; student-content delivery and management; and student-data analytics. ¶¶10, 41–42, 166. Instructure admits as much. Motion at 2, 10, 19; *Am. Title. Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (courts may consider statements in a brief as admissions).

Absent those functions, school ceases to be recognizable as school: little remains without "course management[,] assignment delivery and submission, grading, communication between teachers, students, and parents, and student-data analytics." Motion at 2. By performing those functions, Instructure is a state actor as to those functions. *See West*, 487 U.S. at 56 (finding state action where "[t]he State bore an affirmative obligation to provide adequate medical care to [plaintiff]; the State delegated that function to [defendant]; and [defendant] voluntarily assumed that obligation by contract.").

Instructure relies primarily on *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806 (9th Cir. 2010). There, a fired teacher brought Section 1983 claims

against his private-charter-school employer alleging it defamed him and violated his constitutional rights, arguing that charter schools are state actors for all purposes. *Id*. at 813. The court disagreed, holding that they are not state actors as a matter of law, but leaving open the possibility that they may be in certain contexts. *Id*. at 814.[3]

Instructure argues that under *Caviness*, a private education services provider can *never* be a state actor. Motion at 8. But *Caviness* does not support this bright-line rule; it urges the opposite: "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Caviness*, 590 F.3d at 812.

None of Instructure's other cited cases involve claims by students against school contractors arising from their treatment of student information obtained under the authority of public schools—two involve employment disputes, and the other involves cancellation of a rental contract for an event between a political club and a private nonprofit. *See Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (employment); *Heineke v. Santa Clara Univ.*, 965 F.3d 1009 (9th Cir. 2020) (same); *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161 (9th Cir. 2021) (rental contract). These factually distinguishable cases do not support Instructure's position in this "necessarily fact-bound inquiry." *Rawson*, 975 F.3d at 747.

## 2. Instructure acts jointly, and is entwined, with public schools.

The joint-action test asks whether the state is "so far insinuated into a position of interdependence with the private party that it was a joint participant in the enterprise." *Rawson*, 975 F.3d at 748. The entwinement test is met when "a sufficiently

---

[3] Numerous courts have found state action by charter schools where the challenged conduct pertained to their provision of education services. *See, e.g.*, *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 209 n.24 (E.D.N.Y. 2018) (collecting cases).

close nexus between the state and private actor [exists] so that the action of the latter may be fairly treated as that of the State itself[.]" *Id.*[4]

While the question of whether a private company can be a state actor when providing public-school services appears to be one of first impression in this Circuit, at least one court has held that it can. *Brannum v. Overton Cnty. Sch. Bd.*, 2006 WL 8445313 (M.D. Tenn. June 20, 2006), *aff'd in part, rev'd in part on other grounds and remanded*, 516 F.3d 489 (6th Cir. 2008).

In *Brannum*, plaintiffs' school district approved the installation of surveillance cameras throughout plaintiffs' school to improve security, contracting with a private company, Edutech. *Id.* at *3. School personnel "met with Edutech representatives at least five times on the design, installation, and maintenance process." *Id.* Edutech and school personnel "jointly decided" where to install the cameras, a fact relevant to the challenged conduct. *Id.* The images captured were accessible to anyone with the necessary digital credentials. *Id.* at *4.

The district court found that, because Edutech and the school worked closely to decide the placement and accessibility of the cameras, "Edutech's conduct bears a 'close nexus' to the [school's] challenged action on the installation and monitoring of the surveillance system." *Id.* at *10. "Given the complex nature of this product and service, there is sufficient evidence to support a jury finding that Edutech acted under color of state law." *Id.* On appeal, the Sixth Circuit also characterized the installation of the cameras as "state action." *Brannum*, 516 F.3d at 495.

The relationship between Instructure and schools is even closer than in *Brannum*. Plaintiffs allege that Instructure works closely with public schools to decide what information is collected about students and how it is used: Instructure contracts

---

[4] Given the similarity of the facts supporting state action under these tests, Plaintiffs present them together for brevity.

with schools to provide educational services, which schools procure using public funds. ¶¶ 41–42, 53, 75–77, 160. Instructure obtains access to student data through those contracts. ¶¶ 51, 137. Students interact with Instructure only because they are legally required to attend school, which require use of Instructure's products. ¶¶ 62, 159–61, 169–71, 263–65.

Instructure claims that its data practices are controlled by schools, as defined by its contracts with schools, its policies, and the schools' policies.[5] ¶¶ 122–23. When parents request their children's data, Instructure and schools point to each other. ¶¶ 131, 153, 280–85. Their control of student data is effectively inseparable.

Instructure also asserts that it is authorized to collect student data as a "school official" under the Family Educational Rights and Privacy Act ("FERPA"), thereby admitting that it acts as a school employee and is subject to the school's control. ¶ 333; 34 C.F.R. §99.31(a)(1)(A). Instructure further claims that FERPA lets it stand in the shoes of schools for purposes of redisclosing student information to third parties, which includes hundreds of "partners." ¶ 153. Likewise, Instructure contends that the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6502, *et seq.*, permits it to shift its legal obligations to schools. ¶¶ 142–44, 283–85. Thus, the Complaint is not devoid of factual allegations permitting an inference of state action.

Further, Instructure's own Motion and exhibits establish a close nexus between private and state action, which detail Instructure's close relationship with schools and schools' purported control over its data practices. Motion at 2–5; ECF 51-3 at 4;

---

[5] Although Plaintiffs contend that schools are not authorized to take students' information in this manner, the state still provides purported consent with the intent of receiving Instructure's services, and Instructure cannot access student data unless the state allows it.

---

51-4 at 3, 11–13; 51-5 at 3–5.[6] Indeed, much of Instructure's argument relies on its assertion that it is a "school official" under FERPA. Motion at 2–3, 16, 19 (citing CFR 99.31(a)(1)(A). Thus, the Complaint and Instructure's own admissions establish that its actions "received a clear state imprimatur" to support a finding of state action under the joint-action and entwinement tests. *Rawson*, 975 F.3d at 755.

In sum, Instructure claims to be a "school official" under state and federal law to obtain the student data central to its business, but denies acting "under color of law" to avoid legal liability. Instructure cannot reap the benefits of being a state actor while shirking the attendant burdens. As to the challenged conduct, Instructure has so entangled itself with public schools that it "ought to be charged with a public character and judged by constitutional standards." *Brentwood*, 531 U.S. at 295.

**B. Plaintiffs allege a deprivation of constitutional rights.**

**1. Plaintiffs allege a Fourth Amendment violation.**

Instructure makes three arguments that Plaintiffs inadequately allege a Fourth Amendment violation. Each should be rejected.

Instructure first argues that courts rarely extend the Fourth Amendment to noncriminal, noninvestigatory governmental conduct. Motion at 7-8 (citing *United States v. Attson*, 900 F.2d 1427, 1430 (9th Cir. 1990)). But, as *Attson* observes, the Fourth Amendment has been applied to the conduct of school officials and other civil authorities—the challenged conduct "must be somehow designed to elicit a benefit for the government in an investigatory or, more broadly, an administrative capacity." *Id.* Thus, determining whether the Fourth Amendment applies to Instructure's conduct

---

[6] While the Court may take judicial notice of publicly available documents, the Court may not assume the truth of matters asserted therein. *The People of the State of California, v. Chiquita Canyon, LLC*, No. 2:24-CV-10819, 2025 WL 1555497, at *6 (C.D. Cal., May 30, 2025). Further, any disputed facts must be resolved in favor of Plaintiffs.

requires evaluating "whether such conduct has as its purpose the intention to elicit a
benefit for the government in either its investigative or administrative capacities." *Id.*
at 1431; *see also Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 908 (9th Cir.
2003) (administrative purpose includes maintaining safety and order at school).

Instructure argues that, even if the Fourth Amendment could apply, Plaintiffs
have not alleged that Instructure assisted the government in any investigatory or
administrative purposes. Motion at 9. But Plaintiffs allege that schools use Instructure's
products for numerous administrative purposes. ¶¶ 77–78, 160, 168. Plaintiffs allege,
for example, that Instructure collects and maintains comprehensive records relevant to
the safe and orderly administration of school, such as students' biographical and
location information, attendance records, family and socioeconomic information,
health records, disciplinary records, behavioral information, search activity, and
student-generated content. ¶ 56; ECF 51-4 at 13. Using those records, Instructure also
generates information to help schools predict, manage, and oversee student behavior.
¶¶ 75–78, 226; Motion at 5 ("Instructure generates insights about students at the
direction of and for the sole use of their schools.").

Finally, Instructure argues that Plaintiffs cannot "allege a legitimate expectation
of privacy in information they knowingly share with their schools." Motion at 9. Three
principles belie Instructure's assertion.

**First**, because children provide information to Instructure only as required in the
context of compulsory education, it is not "knowing" or "voluntary" under the Fourth
Amendment. ¶¶ 264–65; *Olson v. Cnty. of Grant*, 127 F.4th 1193, 1201 (9th Cir. 2025)
(providing information to law enforcement for limited purpose did not trigger third-
party doctrine). And Plaintiffs allege that any purported consent is ineffective. ¶¶ 114–
74, 273–79.

***Second***, student-provided information constitutes only a portion of the information Instructure collects. Instructure also obtains student information directly from schools, and automatically from students when they use its products. ¶ 56; ECF 51-3 at 10–14; 51-4 at 13; 51-5 at 3. Such information cannot be characterized as knowingly shared. *See Carpenter v. United States*, 585 U.S. 296, 315 (2018) (cell-phone information not "voluntarily" provided because location information is recorded "without any affirmative act on the part of the user beyond powering up," and phones automatically generate extensive personal data such that "there is no way to avoid leaving behind a trail of location data").

***Third***, knowingly sharing information with another "does not mean that the Fourth Amendment falls out of the picture entirely." *Id*. at 314. Instead, courts consider "the nature of the particular documents sought" to determine whether "there is a legitimate expectation of privacy concerning their contents." *Id*. (rejecting "mechanically applying" third-party doctrine); *Olson*, 127 F.4th at 1201 (third-party doctrine largely inapplicable to personally identifying information).

At least one court has held that "students have an objectively reasonable expectation of privacy" in the types of data that Instructure collects. *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *2 (N.D. Cal. Mar. 17, 2025). The *Cherkin* court observed that this "privacy interest is expressly recognized in federal and California state law," citing FERPA and California Education Code section 49076, on which Instructure also relies. *Id.* It noted that, "[w]hen students voluntarily give information to give their schools . . . they have a reasonable expectation of privacy with respect to how that information will be used for bona fide educational purposes, and by whom." *Id*. at *3. Stating that it saw "no basis for concluding that invasion is any less egregious because students are themselves producing the relevant information by using a pedagogical tool for their public education when it is alleged that neither

they nor their parents or guardians had notice," the court retained all plaintiffs' privacy claims. *Id.*

Plaintiffs thus adequately allege a Fourth Amendment violation.

### 2. Plaintiffs allege a Fourteenth Amendment violation.

Instructure advances five arguments why Plaintiffs inadequately allege Fourteenth Amendment violations.

***First***, Instructure asserts that the Fourteenth Amendment does not explicitly provide for a right to privacy, implying that there is no such right. Motion at 9. "But the Ninth Circuit has clearly stated, and other circuits agree, that the right exists." *Varo v. Los Angeles Cnty. Dist. Attorney's Off.*, 473 F. Supp. 3d 1066, 1072 (C.D. Cal. 2019) (collecting cases). Elsewhere, Instructure acknowledges that "data privacy is a fundamental right[.]" ¶¶ 12, 205.

***Second***, Instructure contends the information it allegedly disclosed is not "highly sensitive" personal information. Motion at 10. But the types of data Instructure collects—and the fact that it concerns children—can only be described as highly sensitive. Elsewhere, Instructure acknowledges that "student data is even more sensitive than general personal data." ¶ 222.

As in *Cherkin*, Plaintiffs allege that Instructure misappropriates "sensitive information about students, including their identities, academics, health, behavior, and web-browsing habits, in which students have an objectively reasonable expectation of privacy."[7] 2025 WL 844378, at *2. Further, "the indiscriminate public disclosure of" identifying information "may implicate the constitutional right to informational privacy." *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999). Plaintiffs allege that

---

[7]"[T]he Ninth Circuit has made clear the right to informational privacy covers a wide range of personal matters." *Doe by and through Tanis*, 576 F. Supp. 3d at 733 (cleaned up). Even "names and addresses" can trigger constitutional concerns depending on the "overall context" of the disclosure. *Id.*

Instructure discloses reams of student data to hundreds of "partners." ¶¶ 68–71, 86, 225, 246.

**Third**, Instructure argues that, even if the information is "highly sensitive," Plaintiffs allege insufficient detail about what was collected and disclosed. Motion at 10. However, Plaintiffs' allegations are based on Instructure's policies, which "explain what information Instructure collects when a school elects to use an Instructure product." Motion at 3–4; ECF 51-3 at 10 (privacy policy states that this is "the information our Products collect and process").

Because Plaintiffs rely on Instructure's own privacy policies, this case is unlike *Doe I v. Google LLC*, in which plaintiffs alleged hypothetical examples of how product features could be used in privacy-violating ways based on "generic product descriptions." 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (no allegation that defendant's products were even in use).

Further, although fulsome, the allegations would have provided even greater detail had Instructure not violated its legal obligation to disclose complete information to Plaintiffs. ¶¶ 129–30, 280–283. Nor does Instructure enable schools to provide parents that information. ¶¶ 131, 284–85. Instructure even prohibits its partners from responding to parents' data requests without *Instructure's* consent. ¶ 111.

Thus, "Instructure and innumerable third parties generate and gain access to an enormous volume of data from and about students and their families, while preventing them from even accessing their own information." ¶ 113. "Students and parents do not and cannot know the full extent of the data Instructure obtains about them, whether that data is accurate, how that data is stored, how long that data is retained, who has access to that data, or how that data or data-derivative information or products are used." *Id*. Instructure may not unlawfully withhold information from Plaintiffs and then fault them for not having it. *See United States v. E. Mun. Water Dist.*, 2008 WL 11333849,

at *4 (C.D. Cal. Apr. 3, 2008) ("[E]quity will not permit one to rely on one's own misconduct.").[8]

**Fourth**, Instructure argues that violation of Plaintiffs' privacy was supported by a proper governmental interest. Motion at 10. If state action compels disclosure of private information, the actor must show "that its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest." *Crawford*, 194 F.3d at 959 (cleaned up).

Instructure contends that "[s]chools and students have a strong interest in the use of technology to manage voluminous student records and facilitate communication between teachers, students, and parents." Motion at 10. However, Instructure fails to show, or even contend, that its actions are narrowly tailored to meet that interest.

Moreover, the Complaint extensively describes Instructure's data-harvesting scheme as far exceeding the state's interest in maintaining education records and facilitating school communications. ¶¶ 43–44, *passim*; *see also Doe by & through Tanis v. Cnty. of San Diego*, 576 F. Supp. 3d 721, 736 (S.D. Cal. 2021) ("[T]he County has not shown how *automatically* allowing access to the type of information at issue here— including private details as to where the minor victim of a sexual assault lives, goes to school, and can be contacted—is narrowly tailored to this interest."). Further, weighing the state's pro-disclosure interests typically requires a level of factual analysis that is impermissible at the pleading stage. *Varo*, 473 F. Supp. 3d at 1075.

**Fifth**, Instructure argues that the risk of identity theft is irrelevant without allegations that information was actually misused. Motion at 10. Not true: disclosure

---

[8] Instructure also challenges the Complaint for not targeting individual products. Motion at 5. But the Complaint alleges that Instructure collects and shares data across its entire suite of products. ¶84. Further, even if only Canvas LMS was at issue, substantial information is generated and taken through that platform alone, including biographical, location, and other identifying information; academic records; and all manner of student-generated content and communications. ¶52; ECF 51-4 at 7.

of identifying information "could implicate the constitutional right to informational privacy because such disclosure exposes individuals to harms such as identity theft." *Varo*, 473 F. Supp. 3d at 1073 (cleaned up).

## II.    Plaintiffs state a CIPA claim.

Instructure first argues that Plaintiffs do not state a claim under the California Invasion of Privacy Act ("CIPA"), arguing that Plaintiffs' eavesdropping theory is unclear. Motion at 11. But the Complaint describes Instructure's eavesdropping scheme in ample detail, explaining how Instructure enables hundreds of companies to intercept student data collected by Instructure in real time through automatic-syncing and data-transmission technologies like APIs. ¶¶ 92–109; *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024) (violation of CIPA's second clause when defendant let third party secretly intercept communications in real time).

Plaintiffs further allege that those companies use the intercepted data for their own business purposes, such as marketing, communication, and student identification, which violates the third clause of CIPA. ¶¶ 77–79, 87–92. Those allegations also support liability under CIPA's fourth clause for aiding and abetting companies' violations of the second and third clauses. *See, e.g.*, *D'Angelo*, 726 F. Supp. 3d at 1200 (violation of third clause where third party used data for its own monetary gain).

Instructure next contends that it cannot be an eavesdropper on its own products, citing the party exception to the derivative-liability provision. Motion at 12. But that exception does not apply when the party enables another to eavesdrop on communications in real time for that party's own purposes. *D'Angelo*, 726 F. Supp. 3d at 1202. Plaintiffs allege that Instructure maintains a vast network of third parties that pay Instructure to intercept data from its products in real time for their own benefit— as Instructure puts it, to "maximize profits in education," ¶ 89—and unknown to the students whose information is intercepted. ¶¶ 86–113; *see D'Angelo*, 726 F. Supp. 3d

at 1202 ("[P]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.") (cleaned up); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) (same, rejecting *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021)).

Finally, Instructure argues that Plaintiffs do not allege that their communications were read or attempted to be read while in transit. Motion at 12. But Instructure itself touts that it provides partners "the most up-to-date information possible," relaying data upon certain "triggering events." ¶¶ 102–103. And Plaintiffs allege that Instructure makes student data available to third parties in real time through Live Events, which capture detailed events about a user and provide partners access to granular, child-specific information. ¶¶ 94, 101. Because those allegations permit a plausible inference that Plaintiffs' communications were read or attempted to be read in transit, they state a claim for relief. *Cherkin*, 2025 WL 844378, at *5 (upholding similar CIPA claim).

### III.  Plaintiffs state a CDAFA claim.

Instructure argues Plaintiffs lack standing under CDAFA because they allege only that Instructure "unfairly diminished the value" of their information, which is not a cognizable loss. Motion at 13. A review of the Complaint makes clear Plaintiffs allege much more. ¶¶ 240–50.

*First*, "the plain language of CDAFA's 'damage or loss' requirement contains no such limitation," as the purpose of the statute is to protect the privacy of individuals. *Cherkin*, 2025 WL 844378, at *6 (retaining similar CDAFA claim on basis of statutory language and purpose) (citing *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024)).

*Second*, Plaintiffs' allegations that they suffered economic loss because there is a market for their data and Instructure's use of their data diminished its value show that

their data "carried financial value" that amounts to loss suffered by Plaintiffs. ¶¶ 240–50; *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) (holding plaintiffs can state economic injury for their misappropriated data); *Biden v. Ziegler*, 737 F. Supp. 3d 958, 976 (C.D. Cal. 2024) (upholding CDAFA claim where "Plaintiff asserts, as the owner of the data, he has suffered damages caused by the Defendant in an amount to be proven in trial"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) ("Because plaintiffs proffer evidence that there is a market for their data ... the Court cannot rule, as a matter of law, that plaintiffs suffered no damages under CDAFA.").

Instructure last argues that Plaintiffs cannot show Instructure tampered with computer systems "without permission" because they "voluntarily provided their information to Instructure," and "their schools authorized Instructure to use and share" with third parties' on Plaintiffs' behalf. Motion at 14. Instructure cites no authority, and its argument fails for the reasons stated in section I.B.1, *supra*.

## IV.    Plaintiffs state a UCL claim.

Instructure's next argument fails because Plaintiffs have UCL standing and meet all the UCL's prongs.

### A. Plaintiffs allege an injury under the UCL.

Instructure argues that Plaintiffs lack standing under the UCL because they did not allege a loss of money or property. Motion at 14.

Courts are split as to whether the economic-injury requirement is satisfied only if the plaintiff loses money or property, or whether allegations of personal-information loss alone will suffice, and there is no binding Ninth Circuit precedent. *See A.B. ex rel v. Google LLC*, 737 F. Supp. 3d 869, 881 (N.D. Cal. 2024) (collecting cases). Instructure correctly observes that the *Cherkin* court required a loss of money or property and dismissed a similar UCL claim. 2025 WL 844378, at *5.

Other courts have concluded, however, that allegations of loss of personal information through misappropriation confer standing under the UCL, including courts in this District. *See, e.g., Owens v. Smith, Gambrell & Russell Int'l, LLP*, 2024 WL 3914663, *14 (C.D. Cal. May 30, 2024) ("Plaintiffs' allegation that the value of their personal information has diminished is also sufficient to state an injury.") (citing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (2021) ("[T]he Ninth Circuit and a number of district courts [] have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing.")); *A.B.*, 737 F. Supp. 3d at 881 ("'Privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL.'") (quoting *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024)); *Brown v. Google LLC*, 2021 WL 6064009, *15 (N.D. Cal. Dec. 22, 2021) (same). Similarly here, Plaintiffs urge this Court to conclude that their allegations state an injury.

### B. Plaintiffs allege violations under all three prongs of the UCL.

Instructure next contends that Plaintiffs do not meet the unlawful prong of the UCL because their allegations are derivative of their other claims, which purportedly fail. Motion at 15. But because Plaintiffs' other claims do not fail, Plaintiffs state a claim under the unlawful prong. *See McVicar v. Goodman Glob., Inc*., 1 F. Supp. 3d 1044, 1053 (C.D. Cal. 2014).

Instructure then argues that Plaintiffs do not meet the fraud prong because they fail to allege reliance, citing *Cherkin*, 2025 WL 844378, at *5.

***First***, *Cherkin* is inapposite on that point: it addressed plaintiffs' deceit claim, not their UCL fraud claim, under which a "plaintiff need not show that he or others were actually deceived [] by the conduct [] in question." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1145 (E.D. Cal. 2013) (cleaned up). Instead, a plaintiff must show either that the public was, or likely was, deceived, or harm to the public interest.

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). Plaintiffs allege that Instructure's misrepresentations were likely to deceive the public and harm the public interest. ¶¶ 175–96.

*Second*, Plaintiffs allege reliance through their schools as their purported agents. ¶ 194; *Hasso v. Hapke*, 227 Cal. App. 4th 107, 129 (2014) (defendant can be liable when it defrauds an agent and the agent both relies and acts on the misrepresentations to detriment of plaintiff); *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 95 (2001) (same).

Finally, Instructure argues that Plaintiffs' allegations do not meet the unfair prong because their claims under the other prongs fail. Motion at 16. But these prongs are independent of each other, *In re Toyota RAV4 Hybrid Fuel Tank Litigation*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. 2021), and Instructure fails to explain how Plaintiffs' unfairness allegations rise or fall with the other prongs. Further, Plaintiffs expressly allege that Instructure's conduct is unfair. ¶¶ 32, 238, 248, 260–62; *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (describing considerations under unfairness prong).

## V.    Plaintiffs state a claim under the Tom Bane Act.

Instructure argues that Plaintiffs fail to explain how Instructure's alleged conduct could violate their civil rights under the Tom Bane Act, Cal. Civ. Code § 52.1 ("the Act"), when FERPA (34 C.F.R. § 99.31(a)(1)(A)) explicitly authorizes Instructure to process data on behalf of schools. Motion at 16. But FERPA does not authorize the challenged conduct. As its name suggests, FERPA was enacted to expand children's privacy protections and parental rights, not diminish them. *See Cherkin*, 2025 WL 844378, at *2. Further, Plaintiffs allege that Instructure does not meet the school-official exception on which Instructure relies. ¶¶ 148–53; *Cherkin*, 2025 WL 844378,

at *3 (rejecting defendant's argument that FERPA permits sweeping collection and use of student information).

Instructure next argues that Plaintiffs fail to plead threats, intimidation, or coercion, arguing that coercion must involve some fear-inducing conduct to make the violation sufficiently egregious to warrant enhanced statutory remedies designed for hate crimes. But the Act is not limited to hate crimes. *Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014).

Further, Plaintiffs sufficiently plead coercion by alleging that school attendance is compulsory and their use of Instructure's products is mandatory. ¶ 159–61. Indeed, parents face criminal penalties for failing to send their children to school. Cal. Educ. Code § 48293. Plaintiffs further allege that they "fear becoming adversarial with their children's schools and the repercussions that they or their children might suffer" by challenging the use of Instructure's products. ¶¶ 162, 256. These allegations demonstrate coercion. *See In re T.F.*, 16 Cal. App. 5th 202, 220 (2017) ("[S]chool is where compliance with adult authority is required and where such compliance is compelled almost exclusively by the force of authority. Like it or not, that is the definition of coercion.") (cleaned up); *see also Leos v. City of El Monte*, 2024 WL 4761422, at *9 (C.D. Cal. Oct. 28, 2024) (finding coercion under the Act where defendant's conduct threatened plaintiff's employment).

Thus, this case is distinguishable from Instructure's authority, which found that "[r]equiring payment of an allegedly illegal tax" was insufficient. *Cnty. Inmate Tel. Serv. Cases*, 48 Cal. App. 5th 354, 371 (2020); *cf. Cherkin*, 2025 WL 844378, at *3 (characterizing similar allegations as "an egregious breach of the social norms").

Moreover, the Act's coercion requirement is meant to limit its application to intentional violations of rights, including deliberate indifference. *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) ("[A]t the pleading stage, the

relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct"). As detailed in section I.B., *supra*, Plaintiffs' allegations show that Instructure's ongoing violations of their constitutional rights are, at minimum, committed with deliberate indifference and for their own financial gain. *See Schmitz v. Asman*, 2022 WL 2340614, *15 (E.D. Cal. June 29, 2022) (Act violation where prison doctor performed consensual but unnecessary diagnostic procedure on inmate "motivated by financial reimbursement").

## VI.    Instructure's choice-of-law arguments do not support dismissal.

Instructure argues that Plaintiffs' common-law claims fail because they do not identify any one state's laws and that their common-law claims cannot extend to a nationwide class. Motion at 16.

**First**, Plaintiffs explicitly cite California law in their public-disclosure claim, ¶ 73, and cite the elements for intrusion upon seclusion and unjust enrichment under California law, ¶¶ 438, 451.

**Second**, "it is well-settled that a district court sitting in diversity must apply the substantive law of the state in which it sits, including choice-of-law rules." *Tovmasyan v. Target Corp.*, 2025 WL 1288020, at *5 (C.D. Cal. May 2, 2025) (cleaned up). And "[u]nder California's choice-of-law rules, California courts apply California law by default." *Id.* (denying motion to dismiss claim for failure to identify state law); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *3 n.2 (C.D. Cal. Feb. 1, 2024) (same); *McIntyre v. Am. Honda Motor Co.*, 739 F. Supp. 3d 776, 791 (C.D. Cal. 2024) (claim "brought by default under California law").

**Third**, "[s]ubject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class." *Tovmasyan*, 2025 WL 1288020, at *4 (cleaned up). Instructure has failed to identify "any conflict of law that would

materially impact the Court's assessment of plausibility." *Id.*; *Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *4 (C.D. Cal. Feb. 22, 2022) ("And where, as here, there is no showing that the law of one or more states should apply over California law, potential variations in state law do not undermine predominance at this stage."); *cf. Kavehrad v. Vizio, Inc.*, 2022 WL 16859975, at *3 (C.D. Cal. Aug. 11, 2022) (rejecting plaintiffs' argument "that their claims are saved by reference to other state laws").

**Fourth**, "[c]ourts in the Ninth Circuit have consistently held that the choice-of-law analysis should occur at the class certification stage." *Tovmasyan*, 2025 WL 1288020, at *4 (collecting cases); *Cherkin*, 2025 WL 844378, at *7 (rejecting argument as premature). And Instructure has undertaken no analysis under the applicable standard. *See Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F.Supp.2d 1155, 1158-61 (S.D. Cal. 2007) (undertaking extensive analysis under complex legal standard).

## VII. Plaintiffs state common-law privacy claims.

### A. Plaintiffs allege public disclosure of private facts.

Instructure first argues that Plaintiffs do not plead any facts supporting an inference that their information was widely published. Motion at 18. While acknowledging Plaintiffs' allegation that "Instructure discloses information to 'more than a thousand' partners," Instructure nonetheless argues that Plaintiffs "do not contend that any specific student's information was disclosed to all of Instructure's partners[.]" *Id.* (quoting ¶ 86).

Plaintiffs allege more than Instructure claims:

(1) "Instructure partners with *more than a thousand companies* in the generation, collection, analysis, use, and sharing of student data," ¶ 86;

(2) Instructure provides partners "access to Instructure's community of 30+ million users," ¶ 23;

(3) "Canvas is a total open platform – open in everything from an OPEN API that allows for customer integrations, to OPEN DATA," ¶ 93;

(4) Instructure gives third parties broad access to all manner of data generated about and extracted from children anytime those children interact with the Canvas ecosystem," ¶ 100;

(5) Instructure provides tools that readily facilitate such access, even automatically and in real time, ¶¶ 102–06;

(6) Instructure "does not meaningfully limit the amount of student data that partners can access," ¶ 95; and

(7) access to Instructure's data helps partners "benefit from a supportive partnership program to maximize profits in education," ¶¶ 88–91.

Plaintiffs' allegations permit a plausible inference that Instructure's sharing of students' information constitutes a public disclosure. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (finding that Google published plaintiffs' private information by selling it to hundreds of companies in the real-time-bidding process).

Further, as explained in section I.B.2, *supra*, Instructure has unlawfully denied Plaintiffs an explanation of what information it took and how it was shared; otherwise, those facts would have also been alleged. It may not now "rely on [its] own misconduct" to avoid liability. *E. Mun. Water Dist.*, 2008 WL 11333849, at *4.

Finally, Instructure's argument that Plaintiffs have no objectively reasonable expectation of privacy in personal information they voluntarily share with school vendors fails for the reasons stated in section I.B.1., *supra*. Motion at 19.

**B. Plaintiffs allege intrusion upon seclusion.**

Instructure argues that Plaintiffs do not plead a reasonable expectation of privacy in the information they knowingly provide to their own schools. Motion at 19. This argument fails for the reasons stated in section I.B.1, *supra*.

Instructure further argues that Plaintiffs do not allege a "highly offensive" intrusion. *Id.* at 20. Not so: Plaintiffs allege that, for its own profit, Instructure collects data about school-aged children that they share as part of their legally required education. As the *Cherkin* court concluded, "[d]oing so without parental notice or consent, as is alleged, plausibly describes conduct that is highly offensive to a reasonable person and constitutes an egregious breach of the social norms." 2025 WL 844378, at *3 (cleaned up).

**VIII.  Plaintiffs state a claim for unjust enrichment.**

Instructure argues that Plaintiffs' unjust-enrichment claim fails because it is not an independent cause of action. Motion at 20. However, "this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.*

Instructure argues that Plaintiffs "have not plausibly alleged that Instructure was unjustly enriched by Plaintiffs." Motion at 20. But that is precisely what Plaintiffs allege—that, but for its nonconsensual data collection, "Instructure could not have grown its business, acquired numerous other tangible and intangible assets, developed other apps, gone public in 2021 at a $2.9 billion valuation, and been acquired by Kohlberg Kravis Roberts in November 2024 in an all-cash deal valuing the company at $4.8 billion." ¶ 454; *see also id. passim*. These allegations support an unjust-enrichment claim. *Cherkin*, 2025 WL 844378, at *7 (upholding similar claim).

Instructure cites *Low v. LinkedIn Corp.* for the proposition that an individual's personal identifying information has no independent monetary value. Motion at 21 (citing 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012)). But *Low* concerned damages for breach of contract, and courts have explicitly held that data-privacy violations can constitute an "actionable wrong on which to base [an] unjust enrichment claim." *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021).

Further, unlike a pure contract claim, a claim for unjust enrichment "emphasizes the wrongdoer's enrichment, not the victim's loss." *Softketeers, Inc. v. Regal W. Corp.*, 2023 WL 2024701, *6 (C.D. Cal. Feb. 7, 2023) (cleaned up). "It can include remedies such as disgorgement of profits, which would not 'involve the restoration of anything the claimant previously possessed.'" *Id.* (cleaned up). "This theory does not hinge on whether or not plaintiff has been harmed or otherwise suffered a loss as a result of defendant's conduct." *Minx Int'l, Inc. v. M.R.R. Fabric*, 2015 WL 12645752, at *5 (C.D. Cal. Feb. 11, 2015).

Unjust enrichment requires only that the defendant inured some benefit from the plaintiff that would be unjust for the defendant to retain. *Id.* Thus, even had Plaintiffs not alleged Instructure damaged them financially, they could still force disgorgement of Instructure's profits under an unjust enrichment theory. *See id.*; *see also Watson*, 178 F. Supp. 2d at 1121 (distinguishing remedies for unjust enrichment and UCL).

## CONCLUSION

Plaintiffs respectfully request that the Court deny Instructure's Motion in its entirety. To the extent necessary, however, Plaintiffs request leave to amend.

Dated:  June 13, 2025                    Respectfully submitted,

By:  */s/ Andrew Liddell*
Andrew Liddell*
**EDTECH LAW CENTER PLLC**
P.O. Box 300488
Austin, Texas 78705

(737) 351-5855
andrew.liddell@edtech.law

Brandon M. Wise*
**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4825
bwise@peifferwolf.com

Andrew R. Tate*
**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
(314) 669-3600
atate@peifferwolf.com

Melisa A. Rosadini-Knott
(California Bar No. 316369)
**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010-1923
323-982-4109
mrosadini@peifferwolf.com

Lori G. Feldman*
**GEORGE FELDMAN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
(917) 983-9321
LFeldman@4-Justice.com

Brittany L. Sackrin*
**GEORGE FELDMAN MCDONALD, PLLC**
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467

(561) 232-6002
BSackrin@4-Justice.com

Karen Dahlberg O'Connell*
**ALMEIDA LAW GROUP LLC**
157 Columbus Ave, 4th Floor
New York NY 10023
(347) 395-5666
karen@almeidalawgroup.com

Britany A. Kabakov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 529-5418
britany@almeidalawgroup.com

* *pro hac vice* granted

*Counsel for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,948 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 13, 2025                                    By: */s/ Andrew Liddell*
                                                        Andrew Liddell