Robyn E. Bladow (CA Bar No. 205189)
rbladow@kirkland.com
Kirkland & Ellis LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone:  (213) 680-8400

*Attorneys for Defendant Instructure, Inc.*
(*Additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JASMINE HERNANDEZ-SILVA, et al., <br><br>　　　　　Plaintiffs, <br><br>v. <br><br>INSTRUCTURE, INC., <br><br>　　　　　Defendant. | Case No. 2:25-cv-02711-SB-MAA <br><br>**INSTRUCTURE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br>Date:　　　August 1, 2025 <br>Time:　　　8:30 a.m. <br>Courtroom: 6C <br>Judge:　　　Hon. Stanley Blumenfeld, Jr. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1
II. ARGUMENT .............................................................................................. 1
    A. Plaintiffs Fail to Plead § 1983 Claims (Counts I and II). .................... 1
    B. California Plaintiffs' CIPA Claim Fails (Count III). .......................... 5
    C. California Plaintiffs' CDAFA Claim Fails (Count IV). ..................... 6
    D. California Plaintiffs Fail to State Any UCL Claim (Count V). .......... 6
    E. California Plaintiffs Fail to State a Tom Bane Civil Rights Act Claim (Count VI). ....................................................................................... 8
    F. Plaintiffs' Common Law Claims Fail to Allege What Law Governs (Counts VII–IX). ................................................................................ 9
    G. Plaintiffs Fail to Plead Invasion of Privacy Claims (Counts VII and VIII). ................................................................................................ 10
    H. Plaintiffs' Unjust Enrichment Claim Fails (Count IX). .................... 12
III. CONCLUSION ........................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.C. by & through Park v. Cortez*,
    34 F.4th 783 (9th Cir. 2022) ................................................................................ 4

*Brannum v. Overton Cnty. Sch. Bd.*,
    2006 WL 8445313 (M.D. Tenn. June 20, 2006) .................................................. 2

*Campbell v. Feld Ent., Inc.*,
    75 F. Supp. 3d 1193 (N.D. Cal. 2014) ................................................................. 8

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010) ........................................................................... 2, 3

*Cherkin v. PowerSchool Holdings, Inc.*,
    2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ............................................... 3, 6, 7

*Cnty. Inmate Tel. Serv. Cases*,
    48 Cal. App. 5th 354 (2020) ................................................................................ 8

*Cornell v. City & Cnty. of S.F.*,
    17 Cal. App. 5th 766 (2017) ................................................................................ 8

*D'Angelo v. FCA US, LLC*,
    726 F. Supp. 3d 1179 (S.D. Cal. 2024) ................................................................ 5

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) ........................................................... 4, 10

*Doe v. Bonta*,
    101 F.4th 633 (9th Cir. 2024) .............................................................................. 4

*Doe v. Cnty. of Santa Clara*,
    2024 WL 3346257 (N.D. Cal. July 8, 2024) ........................................................ 6

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) ............................................................................. 7

*Doe ex rel. Doe v. Hawaii Dep't of Educ.*,
    334 F.3d 906 (9th Cir. 2003) ............................................................................... 3

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ................................................................................ 12

*In re Google Location History Litig.*,
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................. 12

*Griffith v. TikTok, Inc.*,
    2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ....................................................... 12

*Griffith v. TikTok, Inc.*,
    697 F. Supp. 3d 963 (C.D. Cal. 2023) ..................................................................... 6

*Hashemi v. Bosley, Inc.*,
    2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ......................................................... 9

*In re Hyundai*,
    926 F.3d 539 (9th Cir. 2019) ................................................................................... 9

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................. 11

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................... 10

*Lineberry v. AddShopper, Inc.*,
    2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ........................................................... 6

*M.H. v. Cnty. of Alameda*,
    90 F. Supp. 3d 889 (N.D. Cal. 2013) ....................................................................... 9

*Milan v. JPMorgan Chase Bank, N.A.*,
    2025 WL 1343566 (C.D. Cal. May 7, 2025) ........................................................... 7

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ....................................................................... 7

*Pasadena Republican Club v. W. Just. Ctr.*,
    985 F.3d 1161 (9th Cir. 2021) ................................................................................. 3

*Patrick v. Success Acad. Charter Schs., Inc.*,
    354 F. Supp. 3d 185 (E.D.N.Y. 2018) ..................................................................... 2

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) ............................................................................................ 1, 3

*Shulman v. Grp. W Prods., Inc.*,
   955 P.2d 469 (Cal. 1998) .......................................................................................... 10

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
   2022 WL 17170159 (N.D. Cal. Nov. 22, 2022) ...................................................... 7

*In re T.F.*,
   16 Cal. App. 5th 202 (2017) ..................................................................................... 8

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ............................................................................................ 7

*Varo v. L.A. Cnty. Dist. Att'ys Off.*,
   473 F. Supp. 3d 1066 (C.D. Cal. 2019) ................................................................... 4

*West v. Atkins*,
   487 U.S. 42 (1988) ..................................................................................................... 1

*Young v. Neurobrands, LLC*,
   2020 WL 11762212 (N.D. Cal. Oct. 15, 2020) ...................................................... 9

**Statutes**

Cal. Pen. Code § 502(e)(1) ............................................................................................ 6

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................. 5

I.   INTRODUCTION

Plaintiffs' response only highlights the myriad deficiencies in their Amended Complaint ("Compl"). Rather than confront the shortcomings of their "kitchen sink" approach, Plaintiffs sidestep controlling authority and try (futilely) to fit their square peg allegations into dispositive round hole gaps. But at their core, Plaintiffs' allegations reflect policy concerns rather than legally cognizable theories of liability. For the reasons set forth herein and in Instructure's Motion, the Complaint must be dismissed.

II.   ARGUMENT

A.   Plaintiffs Fail to Plead § 1983 Claims (Counts I and II).

Plaintiffs' § 1983 claims fail because they cannot plausibly allege that Instructure—a private software vendor—is a state actor or deprived them of any constitutional right. While Plaintiffs invoke multiple theories of state action, none is supported by the facts alleged or controlling law. Even if Instructure could be deemed a state actor, Plaintiffs still fail to plead actions constituting a Fourth or Fourteenth Amendment claim.

1.   Instructure Is Not a State Actor.

Plaintiffs have not pled state action under *any* test.

Instructure is not a state actor under the *public function test* because it does not engage in the kind of educational activity that "has been 'traditionally the *exclusive* prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). Plaintiffs assert that, without Instructure's services, "school ceases to be recognizable as school." Opp. at 3. That is not remotely credible. Instructure's software products support recordkeeping, grading, and messaging—they do not teach students, impose discipline, or issue diplomas. Education remains the role of teachers and administrators. Instructure's products are a tool, just like a pencil and paper are tools; it is not an educator fulfilling a state function.

Plaintiffs' reliance on *West v. Atkins*, 487 U.S. 42 (1988), is misplaced. That case involved a state-employed physician fulfilling the state's constitutional obligation to

provide medical care to inmates. Instructure is neither a state employee nor engaged in any constitutionally mandated state function. Schools do not hire Instructure to educate students or fulfill any duty traditionally reserved to the state. Plaintiffs cite no authority holding that managing student records is an exclusively governmental role. Nor do they meaningfully distinguish *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806 (9th Cir. 2010), where a charter school engaged in classroom instruction was not deemed a state actor. If a school directly educating students cannot meet the test, a software vendor plainly does not.[1]

Plaintiffs' *joint-action* and *entwinement* theories fare no better. Their claim that Instructure "works closely with public schools" on data collection is refuted by the very privacy policies on which they rely. Opp. at 5. Those policies confirm that *schools*—not Instructure—decide what data to collect and how to use it. *See, e.g.*, Mot. Ex. 1, § 6; Mot. Ex. 2, § 3. This arrangement bears little resemblance to the *collaborative* decision-making in *Brannum v. Overton County School Board*, 2006 WL 8445313, at *10 (M.D. Tenn. June 20, 2006), where a vendor and the school officials worked together to *jointly* select surveillance camera locations. The very fact that schools alone dictate how Instructure's products are used explains why *schools* are the state actors, not Instructure.

Nor does Plaintiffs' bold assertion that Instructure is "inseparable" from schools withstand scrutiny. Opp. at 6. Public schools routinely license Microsoft Office products for students. Those publicly-funded contracts do not make Microsoft a state actor. The same is true here: providing educational software does not convert Instructure into a government entity. Indeed, courts have repeatedly rejected state-action theories based on contractual relationships or public funding alone. *See*

---

[1] Plaintiffs claim that courts elsewhere have recognized charter schools as state actors but cite only a footnote from an out-of-circuit decision. *See Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 209 n.24 (E.D.N.Y. 2018) (relying in dicta on New York law and acknowledging courts reaching the opposite conclusion).

*Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1170 (9th Cir. 2021); *Rendell-Baker*, 457 U.S. at 840. FERPA's designation of Instructure as a "school official" does not change the analysis. As *Caviness* makes clear, a statutory label does not establish state involvement in causing the alleged harm. 590 F.3d at 814. Tellingly, Plaintiffs do not allege that their schools caused them any harm.

## 2. Plaintiffs Fail to Plausibly Allege Constitutional Violations.

Plaintiffs likewise fail to plead any constitutional violation.

Plaintiffs allege a Fourth Amendment search and seizure violation based on data collection for an "administrative purpose," asserting Instructure manages data "relevant to the safe and orderly administration of school." Opp. at 8. They cite no authority equating clerical functions like student recordkeeping with the kind of discretionary administrative adjudications—like school safety, discipline, or policy enforcement—that might in some instances implicate the Fourth Amendment's administrative function prong. The sole case they rely on, *Doe ex rel. Doe v. Hawaii Department of Education*, 334 F.3d 906 (9th Cir. 2003), involved disciplinary actions taken by a school principal—not ministerial recordkeeping. Plaintiffs do not allege that Instructure's software is used to adjudicate school policies or disciplinary decisions. As a result, their Fourth Amendment claim fails.[2]

Plaintiffs' Fourteenth Amendment claim fails because Plaintiffs do not identify what "highly sensitive" personal information was disclosed, or to whom. The right to privacy is narrow and protects only deeply personal data. While Plaintiffs cite *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025), to argue students have a reasonable expectation of privacy in academic or behavioral data, that

---

[2] Plaintiffs devote considerable space to asserting a reasonable expectation of privacy in data they shared with Instructure. But, as discussed below, they offer no specifics about which Instructure products their children used, what data was collected, or with whom it was shared. Without these basic details, it is impossible to assess the reasonableness of any expectation.

is not the standard. The Fourteenth Amendment requires the information be *highly sensitive*, intimate personal information, such as abortion-related medical records, not routine educational data. *See Doe v. Bonta*, 101 F.4th 633, 637–38 (9th Cir. 2024) (data like name, age, and employment history is not "highly sensitive" information).[3] Plaintiffs also suggest data is constitutionally protected because it pertains to children, but the relevant inquiry focuses on the nature of the information itself—not the age of the individual it concerns. The "highly sensitive" threshold is not lowered simply because the data relates to minors. *See A.C. by & through Park v. Cortez*, 34 F.4th 783, 786 (9th Cir. 2022) (applying "standard" test to minors and finding no privacy right in juvenile records with medical and psychological information).

Plaintiffs' Complaint mirrors the deficiencies detailed in *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024), where plaintiffs relied on defendant's product descriptions without alleging how medical providers actually used them. So too here. Plaintiffs rely on Instructure's public privacy policies without alleging how they used the products in their specific schools. Their claim that Instructure withheld information rings hollow, as Plaintiffs know what products they used and what allegedly intimate information they provided.

Finally, even assuming "highly sensitive" information was collected, Plaintiffs still fail to plead a Fourteenth Amendment violation. The alleged privacy interest and risk of harm are low, and schools' need to use technology to manage student records outweighs Plaintiffs' speculative claims. Plaintiffs urge the Court to postpone this balancing inquiry, but where there are no factual allegations to support their claim, the issue may be resolved on the pleadings.

---

[3] Plaintiffs argue that the speculative risk of identity theft makes their data "highly sensitive," citing *Varo v. L.A. Cnty. Dist. Att'ys Off.*, 473 F. Supp. 3d 1066 (C.D. Cal. 2019). But *Varo* involved disclosure of names and addresses to a violent gang member—circumstances not alleged here.

### B. California Plaintiffs' CIPA Claim Fails (Count III).

Plaintiffs' CIPA claim should likewise be dismissed based on their failure to specifically allege the interception of their communications' contents. Although Plaintiffs claim the Complaint includes "ample detail" about Instructure's alleged "eavesdropping scheme," the paragraphs they cite contain no facts identifying what data was allegedly intercepted, by whom, when, or how. Opp. at 13; *see also* Compl. ¶¶ 77–79, 87–109. Plaintiffs rely primarily on *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024), but that case involved focused allegations that a specific third party intercepted chat messages through embedded code that routed communications to it. By contrast, Plaintiffs identify seven third parties (while alleging, that there are "thousands" more), Compl. ¶¶ 86–87, and vaguely claim that certain of these third parties "interact programmatically" with some unidentified Instructure product at some point through APIs, *id.* ¶ 98. Plaintiffs never identify what specific communications were captured by each third party or when. These abstract and conclusory allegations fall well short of the plausibility standard required by *Twombly* and Federal Rule of Civil Procedure 8.

Plaintiffs' remaining efforts to salvage their CIPA claim are equally unavailing. They attempt to evade the party exception by arguing that it does not apply where a defendant aids a third party's CIPA violation for the *third party's* financial benefit. This theory appears nowhere in their Complaint. *See* Compl. ¶¶ 381–92. In fact, the Complaint alleges just the opposite: that *Instructure* used third parties to enhance its own products and further *its own* financial interests—not the other way around. *See id.* ¶¶ 91, 262, 346, 397.

Finally, Plaintiffs belatedly attempt to stitch together conclusory allegations to suggest their communications were "read" or "attempted to [be] read" while "in transit." Opp. at 14. But none of the cited paragraphs identifies when, or by whom, any alleged communication was intercepted. *See* Compl. ¶¶ 94, 101–03. Moreover, allegations that Instructure's "Live Events" feature shares data when "an interesting action takes place,"

or that Instructure provides third parties with access to user data based on certain "triggering events" say nothing about when, if ever, a third party actually accessed and read that information. *See id.* ¶¶ 101–02. Absent factual allegations supporting a plausible inference that any third party read or understood Plaintiffs' alleged communications *while in transit*, Plaintiffs' CIPA claim must be dismissed.

### C. California Plaintiffs' CDAFA Claim Fails (Count IV).

CDAFA permits a private right of action only where a plaintiff has "suffer[ed] damage or loss" from a statutory violation. Cal. Penal Code § 502(e)(1). Plaintiffs conclusorily allege there is a "market for their data" and Instructure "diminished its value." Opp. at 14–15. But they allege no facts indicating they intended to sell their data but could not. That omission is fatal. *See Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (rejecting claims based on generalized loss of control or value of data). Plaintiffs' failure to articulate any theory of loss in a factually supported manner sets this case apart from those they rely upon. *See Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (requiring plaintiffs to "articulate" theory of loss in "a concrete way" and dismissing CDAFA claim for failing to allege a market or value for browsing data).

### D. California Plaintiffs Fail to State Any UCL Claim (Count V).

Plaintiffs' UCL claim fails because they lack statutory standing and do not allege a substantive UCL violation.

Plaintiffs admit a UCL claim requires actual loss of money or property. Opp. at 15. Plaintiffs argue misappropriation of personal data suffices, but courts, including this one, have consistently rejected that theory. *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) (Blumenfeld, J.) (no UCL economic injury without plausible allegation of actual financial loss from inability to sell or reduced value of data); *Cherkin*, 2025 WL 844378, at *5 (no standing absent non-speculative basis for transacting with the data). Moreover, Plaintiffs' allegations undercut their theory. Far

from asserting a desire to commercialize their data, Plaintiffs repeatedly emphasize their *intent to keep it private*. *See, e.g.*, Compl. ¶ 232 (alleging monetization of student data causes "social disempowerment" and harms the "future of a free and sustainable society"); *id.* ¶¶ 197–259 (asserting broad harms stemming from the commercialization of student data); *see also Cherkin*, 2025 WL 844378, at *5 ("It is reasonable to infer that plaintiffs would choose *not* to transact in that market" based on their allegations).

Plaintiffs' UCL claim also fails because they do not adequately allege a predicate violation under any of the statute's three prongs. ***First***, their claim under the "unlawful" prong fails because it is entirely derivative of their other deficient causes of action. *See* Mot. at 15. ***Second***, Plaintiffs allege no facts showing they personally relied on any misrepresentation, as required under the "fraudulent" prong. *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009). Plaintiffs' suggestion that reliance can be imputed through schools as "agents" is likewise unsupported. Opp. at 17; *see O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) ("[C]ourts have recognized that UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under the UCL."). They plead no facts to suggest the schools believe they were misled as parental agents. ***Third***, Plaintiffs' "unfairness" claim rests on the same conduct as their other UCL theories, and courts routinely dismiss unfair-prong claims that overlap with failed unlawful or fraudulent claims. *See Milan v. JPMorgan Chase Bank, N.A.*, 2025 WL 1343566, at *6 (C.D. Cal. May 7, 2025) (unfair prong claim cannot survive where it entirely overlaps with failed unlawful and fraudulent prong claims). Moreover, Plaintiffs rely on *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020), solely for its enumeration of the factors relevant to the unfairness prong. However, merely reciting those elements does not suffice to allege that Instructure's conduct was unfair. *See* Compl. ¶ 409. Rather, Plaintiffs' "unfair UCL claim as pled in the Complaint is based on the same conduct underlying the other two UCL claims, and it must therefore be dismissed." *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2022 WL 17170159, at *9 (N.D. Cal. Nov. 22, 2022).

### E. California Plaintiffs Fail to State a Tom Bane Civil Rights Act Claim (Count VI).

Plaintiffs' allegations fall far outside the scope of the Tom Bane Civil Rights Act, which—as Plaintiffs' own cited authority recognizes—was enacted primarily to "stem a tide of hate crimes." *Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014). Plaintiffs' attempt to recast their educational technology claims as a civil rights violation is plainly misaligned with the statute's intent. Their dismissal of the relevance of FERPA is equally misplaced; FERPA expressly governs the disclosure of student data between students, schools, and Instructure.

More fundamentally, Plaintiffs fail to plausibly allege "coercion." Plaintiffs' claim—that compulsory school attendance and mandatory use of Instructure's products amounts to coercion—is unsupported. Those are decisions made by the *state* and the *school*, not Instructure, which has no power to compel attendance or use of its products. Plaintiffs themselves concede that, far from being "mandatory," students "could opt out of using Instructure's products." Compl. ¶ 162. Instructure's privacy policies—which Plaintiffs incorporate by reference—also make clear that parents can review, delete, or restrict use of student data. Mot. Ex. 1, § 6. These disclosures and opt-out mechanisms belie unlawful compulsion.

Plaintiffs cite no authority supporting their broad view of coercion. Their reliance on *In re T.F.*, 16 Cal. App. 5th 202 (2017), a case involving an involuntary confession under *Miranda*, is inapposite. Unlike a *Miranda* violation, which affects the admissibility of evidence, the Bane Act imposes liability for *egregious civil rights violations*. Courts consistently interpret "coercion" under the Act in light of its original purpose to address hate-based violence. *See Cnty. Inmate Tel. Serv. Cases*, 48 Cal. App. 5th 354, 371–72 (2020) ("The question here is the meaning of coercion under a statute enacted with hate crimes in mind."); *Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th 766, 800 (2017) (the "coercion" element "serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant

enhanced statutory remedies."). Plaintiffs' suggestion that mere "deliberate indifference" suffices to show coercion is contrary to their authority. Opp. at 18. In *M.H. v. County of Alameda*, 90 F. Supp. 3d 889 (N.D. Cal. 2013), the court made clear that Bane Act coercion must be *intentional*. Plaintiffs allege no such intentional, egregious misconduct here.

### F. Plaintiffs' Common Law Claims Fail to Allege What Law Governs (Counts VII–IX).

Plaintiffs' common law claims fail because they do not allege which state's law governs each claim—a fatal flaw, particularly given their proposed nationwide class and Instructure's showing of material differences in state law. Plaintiffs contend they have cited California law for one claim and identified the elements of two others "under California law," but that falls short of alleging *which* state's law(s) actually applies to each claim. Opp. at 19. The Court should reject such cursory allegations.

Plaintiffs argue that California law applies "by default," citing cases relying on *In re Hyundai*, 926 F.3d 539 (9th Cir. 2019). But *Hyundai* is readily distinguishable. It was "decided in the settlement approval context," where neither party contested the application of California law. *Young v. Neurobrands, LLC*, 2020 WL 11762212, at *9 (N.D. Cal. Oct. 15, 2020). This case is at the pleading stage, and Instructure has expressly raised a choice-of-law issue and identified material variations among state common laws. Mot. at 17. These conflicts are not hypothetical—they bear directly on whether Plaintiffs have stated a plausible claim, and also implicate manageability concerns should this litigation proceed. Plaintiffs' counterargument—that Instructure has failed to "identify" a conflict sufficient to defeat plausibility (Opp. at 19–20)—is incorrect and misses the mark. Instructure pointed out that state laws differ on all three claims (*see* Mot. at 17), so the case Plaintiffs cite, *Hashemi v. Bosley, Inc.*, 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022), is simply inapposite. It is Plaintiffs' burden to allege sufficient facts to state a claim that is valid. For all three claims, California's choice-of-law rules would likely require the application of the laws of the states where

the "'last event[s]' involved in the [alleged] collection and interception of data" occurred. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 948 (N.D. Cal. 2023). For a nationwide class suing a Utah company, this necessarily implicates all 50 states. Plaintiffs' failure to identify which state's laws apply or engage with these conflicts renders their common law claims facially deficient. As in *Katz-Lacabe*, where the court dismissed a nationwide intrusion upon seclusion claim for this very reason, the Court here can and should resolve the choice-of-law issue at this stage to avoid inefficient and expensive discovery: "Because such legal differences are significant and Plaintiffs have not explained what evidence additional discovery could adduce, the choice of law analysis can be made at this [pleading] juncture." *Id.* at 949.

### G. Plaintiffs Fail to Plead Invasion of Privacy Claims (Counts VII and VIII).

Plaintiffs fail to plead claims for invasion of privacy. **First**, Plaintiffs' attempt to recast general data sharing allegations as a public disclosure of private facts falls short, as they allege no specific, public disclosure of private information that would be highly offensive to a reasonable person. *See Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 478 (Cal. 1998). Instead, Plaintiffs offer only broad, speculative assertions—*e.g.*, that Instructure "partners with more than a thousand companies," provides partners "access to Instructure's community of 30+ million users," and "does not meaningfully limit" access to data—without identifying any instance in which a *specific student's* private information was publicly shared. Opp. at 20–21. That failure is dispositive. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (allegations about how products *could* be configured to share user information insufficient absent facts showing how they *actually* do).[4] Moreover, to the extent Instructure shares information with

---

[4] Plaintiffs also cannot use vague allegations about APIs, platform openness, or integration tools to substitute for facts. Assertions that data is *accessible* in theory do not show that private facts were actually *disclosed* publicly or to the "public at large," which courts have interpreted as a critical threshold. *See* Mot. at 18.

certain third-party service providers, it does so at the direction of schools for operational and other proper reasons and contractually prohibits those third parties from using the information for their own purposes. Mot. at 4, Ex. 2, §§ 5.2, 6.2. Plaintiffs' assertion that Instructure has withheld information necessary to plead their claims likewise does not hold any water. Opp. at 21. As the alleged users of Instructure's products, Plaintiffs are fully equipped to know what information they provided. Yet they fail to allege *any* information with specificity they contend was made public—for even a single Plaintiff. Plaintiffs also fail to respond to the argument that there is no objectively reasonable expectation of privacy in personal information voluntarily shared with school-authorized vendors—disclosures which are explicitly permitted by law—especially where Plaintiffs do not plausibly allege what information Instructure collects from them personally or how any such disclosure was unexpected, improper, or highly offensive.

*Second*, Plaintiffs' intrusion upon seclusion claim fares no better. Plaintiffs offer no substantive response to the fact that they fail to plead a reasonable expectation of privacy for data they knowingly provide to their own schools and that schools share with contractors as expressly contemplated by law. Mot. at 19–20. Plaintiffs also fail to plausibly allege that Instructure's conduct constitutes a "highly offensive" intrusion. Their assertion that Instructure collects data "for its own profit" does not suffice. Opp. at 22. To begin with, Instructure clearly discloses it uses student personal information solely to provide services to schools and "do[es] not sell or rent personal information to third parties." Mot. at 4, Ex. 1, § 1. The mere fact that Instructure earns revenue from providing software tools to schools does not transform its conduct into a privacy violation. To the contrary, the services are provided in furtherance of legitimate educational interests and in accordance with applicable laws. Moreover, courts have made clear that to satisfy the "highly offensive" standard, a plaintiff must allege an "*egregious breach*" of social norms. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). Merely providing software and data management services

to schools to further legitimate educational interests, as permitted by law, does not meet that standard.

### H. Plaintiffs' Unjust Enrichment Claim Fails (Count IX).

Plaintiffs entirely overlook that this Court—and others—have consistently dismissed unjust enrichment claims on the ground that unjust enrichment is a remedy, not an independent cause of action. *See Griffith v. TikTok, Inc.*, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023) (Blumenfeld, J.) (dismissing because "California does not recognize unjust enrichment as an independent cause of action"). In fact, this Court specifically rejected the interpretation of *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016), advanced by Plaintiffs, clarifying that *ESG* does not displace *Astiana*'s general rule that unjust enrichment is not a standalone claim. *Griffith*, 2023 WL 9019035, at *6. Plaintiffs' reliance on *In re Google Location History Litigation*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021), is similarly unavailing. That case involved a quasi-contract theory where the plaintiffs alleged they had conferred a benefit the defendant knowingly accepted. Here, by contrast, Plaintiffs do not allege they conferred any benefit directly on Instructure; rather, Instructure provides valuable services to schools and students. Under these circumstances, it is neither unjust nor inequitable for Instructure to retain a resulting benefit (paid by the schools, not the students).

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

| | | |
|---|---|---|
| 1 | Dated: June 23, 2025 | */s/ Martin L. Roth* |
| 2 | | Robyn E. Bladow (CA Bar No. 205189) |
| | | rbladow@kirkland.com |
| 3 | | Kirkland & Ellis LLP |
| 4 | | 555 South Flower Street, Suite 3700 |
| 5 | | Los Angeles, CA 90071 |
| | | Telephone: (213) 680-8400 |

Dated: June 23, 2025        */s/ Martin L. Roth*

Robyn E. Bladow (CA Bar No. 205189)
rbladow@kirkland.com
Kirkland & Ellis LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Mark McKane, P.C. (CA Bar No. 230552)
mark.mckane@kirkland.com
Kirkland & Ellis LLP
555 California Street, 27th floor
San Francisco, CA 94104
Telephone: (415) 439-1400

Martin L. Roth, P.C. (*pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky, P.C. (*pro hac vice*)
alyssa.kalisky@kirkland.com
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000

Olivia Adendorff, P.C. (*pro hac vice*)
olivia.adendorff@kirkland.com
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770

*Counsel for Defendant Instructure, Inc.*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Instructure, Inc. certifies that this brief contains 3,976 words, which complies with the word limit of L. R. 11-6.1.

*/s/ Martin L. Roth*
Martin L. Roth