UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE HERNANDEZ-SILVA et al., <br><br> Plaintiffs, <br><br> v. <br><br> INSTRUCTURE, INC., <br><br> Defendant. | Case No. 2:25-cv-02711-SB-MAA <br><br> ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT [DKT. NO. 51] |

    Defendant Instructure, Inc. provides software programs and services to schools for use in course management, assignment submission, grading, and communication among teachers, students, and parents.  In this nationwide putative class action, parents of five minor children challenge Defendant's collection, use, and disclosure of student data, which they allege violates various federal and state laws.  Defendant moves to dismiss the First Amended Complaint (FAC) for failure to state a claim.  The Court held a hearing on August 1, 2025.  Because Plaintiffs have not plausibly alleged any specific facts about the taking or use of their data, the motion is granted and the FAC is dismissed.  Plaintiffs' request for leave to amend is granted except as to their claims under 42 U.S.C. § 1983.

I.

    Defendant is an education technology company that provides digital products to schools and school districts for use in K-12 education. Dkt. No. 33 ¶ 2 (FAC).  Specifically, Defendant contracts with schools to provide "services ranging from course management; assignment delivery and grading; communication between teachers, students, and parents; student-content delivery and management; and student-data analytics." *Id.* ¶ 41.  Defendant's "suite of products . . . includes dozens of data-derived products," including 18 identified by name in the FAC. *Id.* ¶ 81.  These products collect data from student users,

including: personally identifiable information; location information; educational records including test results, grades, disabilities, and socioeconomic information; and device and usage data. *Id.* ¶ 56.

Defendant uses and discloses this data for a variety of purposes, ranging from soliciting feedback about its products to creating "detailed . . . personal dossiers of [students]" to "generate myriad purported predictions about a child's life." *Id.* ¶¶ 73, 75. It allegedly sells predictions, insights, and analytics regarding a child's attributes and behaviors to third-party customers who in turn use the information to "identify, target, manipulate, make decisions about, and otherwise control or monetize children and their personal information." *Id.* ¶¶ 76–77.[1]

Four parents whose minor children use Defendant's products as a required part of their public schooling bring this putative class action: Plaintiffs Jasmine Hernandez-Silva and Michael Silva, on behalf of their minor children M.C. 1 and M.C. 2, Heidi Saas, on behalf of her minor child M.C. 3, and Julianna Lorenzen, on behalf of her minor children M.C. 4 and M.C. 5. *Id.* ¶¶ 13, 17–25. Saas and M.C. 3 are Maryland citizens; the other plaintiffs all reside in California. *Id.* Though they do not know the full extent of the data Defendant obtains from the children, Plaintiffs object to the use and disclosure of their data by Defendant. *Id.* ¶¶ 114, 120, 127. Plaintiffs claim that Defendant's use and disclosure of their data harms their children in a variety of ways, including by invading their privacy and failing to properly compensate them for their valuable data. *Id.* ¶¶ 197–259.

Accordingly, Plaintiffs assert claims for violations of: (1) their Fourth Amendment rights under 42 U.S.C. § 1983; (2) their Fourteenth Amendment rights under § 1983; (3) the California Invasion of Privacy Act (CIPA); (4) the

---

[1] Citing its own documentation, Defendant contends that it "only uses a student's personal information to provide services and 'do[es] not sell or rent personal information to third parties,'" and that "[t]o the extent [it] discloses information to certain third-party service providers, it does so only at the schools' direction to facilitate the provision of services to schools." Dkt. No. 51-1 at 4. Defendant has not properly sought judicial notice of the documents it attaches to its motion, but even if they are properly incorporated by reference into the pleadings, the court does not consider them for the truth of the facts they assert and instead accepts as true the allegations in the FAC for purposes of Defendant's pleading challenge. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

Comprehensive Computer Data Access and Fraud Act (CDAFA); (5) California's Unfair Competition Law (UCL); and (6) the Tom Bane Act (Bane Act); as well as claims for (7) public disclosure of private facts; (8) intrusion upon seclusion; and (9) unjust enrichment. *Id.* ¶¶ 327–464. Plaintiffs seek to certify a nationwide class of students who attend or attended a K-12 school and used Defendant's school-marketed products. *Id.* ¶ 300. Plaintiffs M.C. 1, M.C. 2, M.C. 4, and M.C. 5 also seek to represent a subclass of California students who used Defendant's products. *Id.* ¶ 301. Defendant moves to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim. Dkt. No. 51.

II.

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well-pleaded factual allegations must be accepted as true, but a court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "a legal conclusion couched as a factual allegation." *Id.* (cleaned up).

Plaintiffs' FAC is an ambitious pleading that fails to satisfy the basic requirements of Rule 8. *See* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim[s] showing that the pleader is entitled to relief"). The 82-page pleading largely consists of broad, generalized allegations about Defendant's full product line, while offering scant detail about Plaintiffs' own experiences with any of them. The section titled "Plaintiff-Specific Allegations" spans only a few pages and contains mostly conclusory assertions. Dkt. No. 33 ¶¶ 263–98. Of Defendant's 18 specific programs identified elsewhere in the FAC, Plaintiffs identify only one they used. *Id.* ¶ 263 (alleging Plaintiffs use products "including Canvas LMS"). They conclusorily allege that Defendant "has provided third parties personally identifying data belonging to Plaintiffs for commercial purposes, including identification, targeting, influencing, and decision-making purposes," *id.* ¶ 271, but fail to identify what information—or even what categories of information—was collected from any plaintiff or to whom it was allegedly disclosed. Although Plaintiffs seek to certify nationwide and statewide classes, they do not allege that all school districts contract with Defendant in the same ways or for the same products. They do not even identify what schools or districts their children attend or what products those schools use. These omissions undermine Plaintiffs' ability to plausibly allege any claim for relief.

Responding to these deficiencies, Plaintiffs assert that Defendant has wrongfully withheld information about what data it took from their children and how it shared the data, and that it would be unfair to allow it to evade liability through its own misconduct. This argument fails for two reasons. First, at least some of the information about the products Plaintiffs' children used and the type of information they submitted is within their knowledge. Second, if Plaintiffs have a Rule 11 basis for alleging that Defendant misused their information, they can present it in their pleadings. If they do not, they are not entitled to use litigation as a fishing expedition to seek discovery and find out whether Defendant misused the data.

III.

Plaintiffs' failure to allege specific facts about Defendant's taking of *their* data defeats all their claims. Nevertheless, the court addresses the parties' arguments as to each cause of action.

A.

Defendant first moves to dismiss Plaintiffs' § 1983 claims in Count 1 and Count 2 for violations of their Fourth and Fourteenth Amendment rights, contending Plaintiffs have failed to allege state action.[2] Dkt. No. 51-1 at 6–8.

To state a claim for civil rights violations under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Private companies generally are not liable under § 1983 and may be treated as state actors in only exceptional circumstances. *O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023) (holding Twitter was not a state actor because it acted in accordance with its own policies, not any power conferred by the government, when it suspended a user's account allegedly in violation of his constitutional rights), *cert. denied,* 144 S. Ct. 2715 (2024). The state-actor inquiry examines whether "the nature of the relationship between the private party and the government is such that the alleged infringement of federal rights is fairly attributable to the government." *Children's Health Def. v. Meta Platforms, Inc.*,

---

[2] Because Plaintiffs have not adequately alleged that Defendant is a state actor, it is unnecessary to reach the parties' arguments about the alleged deprivation of Plaintiffs' constitutional rights.

112 F.4th 742, 754 (9th Cir. 2024), *cert. denied,* No. 24-732, 2025 WL 1787729 (U.S. June 30, 2025) (cleaned up). "In other words, a plaintiff must allege facts supporting an inference that the government is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (cleaned up).

The allegations in the FAC do not show that the government is responsible for Defendant's collection and use of student data. Indeed, it appears that the relevant government actor is different for each group of plaintiffs, and the FAC does not even identify which school district's actions or policies are behind each of the alleged violations, let alone show how each relevant district directed Defendant's actions. Rather, the FAC alleges that *Defendant* collects student data to provide to third parties for purposes outside the scope of the educational services it is retained by schools and school districts to provide. *See, e.g.*, Dkt. No. 33 ¶ 59 ("The data Instructure obtains . . . enables Instructure and its many third-party partners to build dynamic, robust, and intimate dossiers of children."); *id.* ¶ 60 (alleging the data Defendant collects "far exceeds that which is reasonably necessary" for school activities facilitated by Defendant's products); *id.* ¶ 72 (alleging Defendant's use and disclosure of student data "exceed[s] legitimate educational purposes"); *id.* ¶ 75 ("Instructure does not collect user data for the . . . limited purpose of assisting students with their educational pursuits."). Indeed, Plaintiffs allege that "[s]chools do not control the generation, collection, storage, use, or disclosure of student data by" Defendant or third parties or otherwise effectively consent to the use and disclosure of the data—allegations inconsistent with the schools being responsible for the challenged actions. *Id.* ¶¶ 149, 155.

In opposition, Plaintiffs raise two unpersuasive arguments. First, Plaintiffs argue that Defendant is a state actor because it performs a public function by providing education services. Specifically, Plaintiffs contend that Defendant is responsible for "course management, assignment delivery, and grading; communication between teachers, students, and parents; student-content delivery and management; and student-data analytics." Dkt. No. 54 at 3 (citing Dkt. No. 33 ¶¶ 10, 41–42, 166). However, for a private entity to qualify as a state actor based on performing a public function, "it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (holding that a private entity that operated public access broadcast channels was not a state actor). In a case finding that a charter school was not a state actor, the Ninth Circuit held that the "provision of educational services is not a function that is

traditionally and exclusively the prerogative of the state." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 815–16 (9th Cir. 2010); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 842–43 (1982) (providing special education services not a traditional and exclusive public function). Accordingly, Plaintiffs' allegations that Defendant performed certain educational functions do not demonstrate that Defendant is a state actor.

Second, Plaintiffs contend that Defendant acts jointly and is so entwined with schools that it may fairly be treated as a state actor. *See Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (private entity may be state actor under "joint action" test when "the government has so far insinuated itself into a position of interdependence with a private entity that the private entity must be recognized as a joint participant in the challenged activity") (cleaned up). Plaintiffs cite Defendant's statutory authorization to collect student data and its status as a school contractor in support of this theory, but neither of these facts satisfies the state-action requirement. *Caviness* was clear that statutory labels are "not necessarily dispositive with respect to all of [a private] entity's conduct." 590 F.3d at 814. Therefore, the fact that Defendant is authorized to collect student data as a "school official" under the Family Educational Rights and Privacy Act (FERPA) and purports to comply with Children's Online Privacy Protection Act (COPPA) does not convert it into a state actor. Moreover, Plaintiffs' allegations that the schools "do not control" Defendant's "generation, collection, storage, use, or disclosure of student data" and "lack the information necessary to support informed consent" are in tension with their suggestion that Defendant is acting jointly with the schools in such an intertwined way that it should be considered a state actor when it collects and discloses the data. Dkt. No. 33 ¶¶ 149, 155.

With respect to Defendant's role as a contractor, the Supreme Court has held that private contractors' acts "do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker*, 457 U.S. at 841. Instead, courts look at the facts surrounding the contractual relationship, including whether: (1) the government entity and contractor are financially integrated; (2) the government profits from the alleged unconstitutional activity; and (3) the government substantially cooperates in the alleged misconduct. *Pasadena Republican Club*, 985 F.3d at 1169–71. None of these factors is plausibly alleged here as to any school district, much less as to all school districts nationwide. Plaintiffs do not allege financial integration or that schools profit from Defendant's data collection; they allege that it is third parties who profit from Defendant's data collection activities. Nor does the FAC allege that schools cooperate in providing students' data to third parties.

Plaintiffs rely on a single distinguishable case from the Middle District of Tennessee in support of their joint action/entwinement theory.  In *Brannum v. Overton County School Board*, the plaintiffs sued a school and its contractor for installing video cameras in school locker rooms.  No. 2:03-CV-0065, 2006 WL 8445313, at *3 (M.D. Tenn. June 20, 2006), *aff'd in part, rev'd in part and remanded,* 516 F.3d 489 (6th Cir. 2008).  The evidence in that case showed that the decision about where the cameras were placed was made jointly by the school officials and contractor.  *Id.*  The court thus denied summary judgment for the contractor, holding that a material fact dispute existed as to whether it was a state actor based on "evidence that the placement and accessibility of these video cameras was a joint decision of [the contractor] and school officials."  *Id.* at *10.

Plaintiffs do not allege similar joint action with respect to the purported misconduct.  While they point to allegations in the FAC that students are compelled to attend school and required to use Defendant's products, these allegations do not demonstrate a joint decision between schools (let alone the particular schools Plaintiffs' children attend) and Defendant to collect students' data for the purpose of disclosing it to third parties.  *See* Dkt. No. 33 ¶¶ 169–70, 264–65.

Because Plaintiffs do not plausibly plead that Defendant is a state actor, their § 1983 claims are dismissed.

B.

Defendant next moves to dismiss Plaintiffs' claim under CIPA §§ 631 and 632.  Section 631 prohibits using electronic means to "learn the contents or meaning of any message, report, or communication while the same is in transit" without consent or in an unauthorized manner.  Cal. Penal Code § 631(a).  Section 632 imposes liability on "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication" of another.  *Id.* § 632(a).  As alleged, Plaintiffs' §§ 631 and 632 claims undisputedly require live interception of the confidential communication.

Plaintiffs argue that they plead live interception by alleging that Defendant permits third parties to "intercept student data . . . in real time through automatic-syncing and data-transmission technologies like APIs." Dkt. No. 54 at 13 (citing Dkt. No. 33 ¶¶ 92–109).  But that is not what their pleading says.  The FAC only vaguely references Defendant's use of APIs without explaining how the

7

technology allows real-time interception in general or how it was used to intercept Plaintiffs' data in particular. That is not enough to plausibly allege eavesdropping under CIPA, which "refer[s] to a third party secretly listening to a conversation between two other parties." *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008). Learning the content of a communication after it has been sent is not eavesdropping; and Plaintiffs' allegations, as currently pleaded, merely suggest that third parties gain access to student users' communications at some point, not that third parties "secretly listen" to the communication as it is being transmitted from the students to Defendant. *See* Dkt. No. 33 ¶¶ 93, 98, 101–03.

In sum, because the allegations fail to "indicate *when* the interception occurs," they do not support an eavesdropping claim. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (dismissing CIPA claim for failure to allege third parties intercepted the communications while in transit); *cf. D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198–99 (S.D. Cal. 2024) (finding interception allegations sufficient where the complaint described how defendant embedded code in its website that automatically directed chat communications to a specific third party). A single vague and conclusory allegation that "Instructure shares student data in real time and/or near-real time" is not sufficient to demonstrate any eavesdropping by third parties, let alone to plausibly allege that confidential communications by Plaintiffs' children were intercepted or subject to eavesdropping by a third party. Dkt. No. 33 ¶ 94. Because Plaintiffs fail to state a claim under CIPA, Count 3 is dismissed.

### C.

Defendant correctly argues that Count 4 and Count 5 must be dismissed because Plaintiffs fail to establish standing under the UCL or CDAFA. Turning first to the UCL, this court previously explained:

> The UCL "requires that a plaintiff have 'lost money or property' to have standing to sue," which requires the plaintiff to "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). This requirement was enacted "to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." *Id*. at 321. The UCL's requirement of economic injury

> "renders standing under [the UCL] substantially narrower than federal standing under article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries." *Id*. at 324.

*Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 976 (C.D. Cal. 2023) (cleaned up).

Here, as in *Griffith*, Plaintiffs allege two theories of economic injury: the loss of their private data and the diminution of its value. *Id.* at 976–77; Dkt. No. 33 ¶¶ 248–50. The court's reasoning in *Griffith* applies equally here:

> Plaintiff[s] generally allege[] that internet users' personal information . . . may be monetized, but [they do] not allege specific facts showing that [they] could have sold the limited data collected by [Defendant], that [they have] ever attempted or intended to sell [their] data, or that [Defendant's] collection of that data, without more, has impeded [their] ability to sell [their] data.

*Griffith*, 697 F. Supp. 3d at 977. Plaintiffs do not address, let alone distinguish, *Griffith*, instead urging the court to side with courts that have found allegations about the loss of value of data sufficient—including a case *Griffith* found unpersuasive because it misstated the sole Ninth Circuit authority from which it derived its contrary conclusion. *See* Dkt. No. 54 at 16 (citing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (2021)); *Griffith*, 697 F. Supp. 3d at 977. Plaintiffs' other cases likewise rely on *Calhoun*. Plaintiffs have not shown a basis for departing from the conclusion in *Griffith*—either because this court erred in *Griffith* or because the allegations here are distinguishable. Therefore, Plaintiffs have not established standing under the UCL, and their claim is dismissed.

Similarly, Plaintiffs do not plausibly plead standing under CDAFA, although it is a closer question. CDAFA prohibits knowingly accessing and taking, copying, or using computer data without permission and allows plaintiffs who "suffer[] damage or loss by reason of a violation" of the statute to seek compensatory damages and injunctive or other equitable relief. Cal. Penal Code §§ 502(c)(2), (e)(1). District courts in the Ninth Circuit are divided as to whether the diminution in value of plaintiffs' data constitutes "damage or loss" under CDAFA. *See, e.g.*, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (dismissing CDAFA claim and explaining that "experienc[ing] a diminution of the value of their private and personal information" would be insufficient to confer standing); *Doe v. Cnty. of Santa Clara*, No. 23-CV-04411, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (same); *but see Brown v. Google LLC*, 685 F. Supp. 3d

9

909, 940 (N.D. Cal. 2023) (denying motion to dismiss CDAFA claim because "plaintiffs can state an economic injury for their misappropriated data" based on the economic value of their browsing history).

Even assuming that the diminution in value of Plaintiffs' data may provide a basis for standing, they have not alleged that theory in a nonconclusory fashion. Instead, they allege general facts regarding the market for user data and conclude that by profiting from students' data generally, Defendant "[has] thus caused students economic injury." Dkt. No. 33 ¶ 247. Because these allegations do not explain what valuable data Defendant obtained from Plaintiffs or how Defendant's use of the data causes its value to Plaintiffs to diminish, the FAC fails to allege standing under CDAFA. *See Lineberry v. AddShopper, Inc.*, No. 23-CV-01996, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (dismissing CDAFA claim where plaintiffs did not "articulate [their] theory of loss in a concrete way" because the complaint did not "provide any allegations about how or why" the "plaintiffs suffer[ed] an economic loss every time their data is used and shared"). The CDAFA claim is therefore dismissed.

D.

Defendant moves to dismiss Plaintiffs' claim under the Bane Act, which prohibits persons from "interfer[ing] by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States," regardless of whether the defendant is acting under color of law. Cal. Civ. Code § 52.1. "The statute was intended to address only egregious interferences with constitutional rights, not just any tort." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 395 (2017) (cleaned up). Coercion—the sole theory on which Plaintiffs rely—means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Meyers v. City of Fresno*, No. 10-CV-2359, 2011 WL 902115, at *7 (E.D. Cal. Mar. 15, 2011).

Plaintiffs allege that Defendant engages in coercion by "plac[ing] students and their parents in the position of having to choose between their rights to privacy and their right to an education," and by forcing them to "risk compromising their relationship with school personnel" if they attempt to opt out. Dkt. No. 33 ¶ 162; *see also id.* ¶ 256 ("Parents fear becoming adversarial with their children's schools and the possible repercussions they or their children might suffer if they are perceived as difficult or meddlesome[.]"). They also allege that school attendance is mandatory and that they were not given a choice to forgo using Defendant's

products while at school. *Id.* ¶¶ 159–61. These allegations concern purportedly coercive conduct by the schools, not by Defendant. Defendant is not responsible for compulsory attendance laws or even any decision to require students to utilize its products. Plaintiffs have not plausibly alleged any compulsion by Defendant that could support liability under the Bane Act. Accordingly, the Bane Act claim is dismissed.

E.

Defendant seeks dismissal of Plaintiffs' common-law claims in Count 7 (public disclosure of private facts), Count 8 (intrusion on seclusion), and Count 9 (unjust enrichment), which the parties largely address together.

1.

As an initial matter, Defendant argues that Plaintiffs' common-law claims must be dismissed for failure to allege what state's law governs. Construing the complaint in the light most favorable to Plaintiffs, the FAC alleges the common-law claims (like all the other state-law claims) under California law. Indeed, the FAC expressly refers to California law as the basis for its public disclosure claim. Dkt. No. 33 ¶¶ 425. While the FAC does not expressly state that California law governs the intrusion or unjust-enrichment claims, it pleads the elements of the claims as articulated in California law. *Id.* ¶ 438 (alleging elements of intrusion claim); *id.* ¶ 451 (alleging elements of unjust-enrichment claim). Moreover, Plaintiffs confirm in their opposition that they seek to recover under California law.[3]

2.

The elements of a public disclosure claim under California law are: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W Prods. Inc.*, 18 Cal. 4th 200, 214 (1998). "To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or

---

[3] Plaintiffs do not explain how Heidi Saas, a Maryland citizen, may allege claims under California law based on the use of Defendant's products at M.C. 3's school in Maryland. The court does not reach the parties' arguments about class certification, which are premature.

matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)) (cleaned up).

The FAC generally alleges that Defendant, through its myriad of products, collects certain data from student users and discloses that data to "third parties." The FAC does not identify which products Plaintiffs use (other than one—Canvas LMS), what type of data was collected from them, or to whom Defendant provided the data. While the FAC identifies the types of data collected from Canvas users generally and alleges that "partners" have access to this data, Dkt. No. 33 ¶¶ 104–10, it does not allege who these partners are—e.g., schools, companies that facilitate the use of Canvas at schools, or other third parties who do not require the students' data for any legitimate educational purposes. On these scant pleadings, Plaintiffs have not plausibly alleged that any data collected from them was shared with any particular third party in a way that is "offensive" or violates the Plaintiffs' reasonable expectations of privacy. The motion to dismiss is thus granted as to Plaintiffs' common-law privacy claims.

3.

Finally, Plaintiffs' unjust-enrichment claim fails because California law does not recognize unjust enrichment as an independent cause of action. The Ninth Circuit explained in *Astiana v. Hain Celestial Grp., Inc.* that "in California, there is not a standalone cause of action for 'unjust enrichment[.]'" 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008)). Plaintiffs rely on *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016), which allowed an unjust-enrichment claim to move forward where the plaintiff alleged a quasi-contract claim for restitution. As this court has previously explained, "[w]here, as here, Plaintiffs make no suggestion that their unjust enrichment claim presents a viable quasi-contract theory of recovery, the Court declines to read *EGL* as displacing *Astiana*'s general rule that there is no independent cause of action for unjust enrichment under California law." *Griffith v. TikTok, Inc.*, No. 5:23-CV-00964-SB-E, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023). Because Plaintiffs do not proceed on a quasi-contract theory, their unjust-enrichment claim is dismissed.

IV.

Plaintiffs request leave to amend if the court determines that the motion should be granted. "The court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the policy favoring amendments "is to be applied with extreme liberality," *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). At the hearing, Plaintiffs conceded that if given an opportunity to amend their § 1983 claims, they could not allege any additional facts demonstrating state action. Accordingly, the § 1983 claims in Counts 1 and 2 are dismissed without leave to amend. As to the remaining causes of action, Defendant has neither opposed amendment nor shown that amendment would necessarily be futile. Moreover, this case is still at an early stage, and Plaintiffs have not previously amended in response to a pleading challenge. Accordingly, Plaintiffs are granted leave to file a Second Amended Complaint (SAC) on Count 3 through Count 9 by August 22, 2025. Plaintiffs are cautioned that if Defendant moves to dismiss the SAC for failure to state a claim, the court does not expect to allow Plaintiffs to amend their pleading again to add allegations that could have been included in the SAC.

V.

Defendant's motion to dismiss Plaintiffs' complaint is granted, and Plaintiffs' claims are dismissed for failure to state a claim. Plaintiffs may file their SAC no later than August 22, 2025. If they do not timely file their SAC, the dismissal of their individual claims will automatically convert to a dismissal with prejudice.

Date: August 4, 2025

                                          Stanley Blumenfeld, Jr.
                                          United States District Judge